## ALLEN v. SMITH.

APPEAL FROM THE CIRCUIT-COURT OF THE UNITED STATES FOR THE
EASTERN DISTRICT OF ARKANSAS.

No. 14.   Submitted February 15, 1888. — Decided March 5, 1889.

In a suit in equity, brought by a judgment creditor, to set aside, as fraudu-
lent, another judgment against the debtor, and the sale thereunder to the
plaintiff in the latter, of land of the debtor, it was held, that the burden
of proof was on the plaintiff, and that the latter judgment had not been
successfully impeached.

The plaintiff could not avail himself of the objection that the debtor did
not plead the statute of limitations to a part of the claim, in the suit
which resulted in the latter judgment; the debtor was at liberty to waive
the plea; and there was sufficient in the relations of the parties and in
the circumstances of the case to warrant him in doing so.

IN EQUITY. Decree dismissing the bill. Complainants ap-
pealed. The case is stated in the opinion.

*Mr. Attorney General* for appellants.

*Mr. U. M. Rose* for appellees.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an appeal by Thomas H. Allen and two other per-
sons, partners under the name of Allen, Nugent & Co., and
Thomas H. Allen individually, from a decree of the Circuit
Court of the United States for the Eastern District of Arkan-
sas, dismissing their bill in a suit in equity brought by them
against Benjamin H. Smith and the heirs-at-law of William
H. Todd, deceased, and Levi H. Springer, administrator of
Todd, to set aside, as fraudulent and void as against the plain-
tiffs, as creditors of Todd, a judgment recovered by Smith
against Todd, and the sale of certain lands of Todd to Smith
on execution on that judgment, and for a sale of those lands
under judgments obtained by the plaintiffs, and the payment
of those judgments out of the proceeds of such sale.

The substance of the bill is, that, in January, 1875, Todd
executed three promissory notes, payable in one, two and
three years respectively from their date, in favor of one Cohen,
each for $1666.66, with 10 per cent interest; that Allen,
Nugent & Co. became the owners of those notes, and brought

suit on the first two of them which fell due, in the Circuit Court of Chicot County, Arkansas, by attachment against Todd, and levied on his interest in certain land in Chicot County on the 18th of June, 1877; that, on February 2, 1878, they obtained judgment in that suit, against Todd, for $4341.-64, with 10 per cent interest from that date, the judgment declaring that it was a lien upon the property attached; that like proceedings were had by them by attachment of the same land in a suit on the third note, in the Circuit Court of the United States for the Eastern District of Arkansas, and a judgment was recovered by them against Todd, in that suit, on the 19th of April, 1878, for $2206.47, with 10 per cent interest from that date, the judgment declaring that it was a lien on the land; that in both of those suits Todd was personally summoned; that on the 13th of July, 1876, Todd made another note in favor of Thomas H. Allen & Co., of which firm Thomas H. Allen was a member, for $1507.58, payable thirty days from date; that a judgment was recovered by them on that note, against Todd, in a court in Pennsylvania, on July 17, 1877, for $1637.33; that that judgment was duly assigned to Allen, and he brought suit on it in the Circuit Court of Chicot County, against Todd, by attachment; that the interest of Todd in the land before mentioned was attached in that suit, and personal service was also had upon Todd, and Allen recovered judgment in the suit, against Todd, on February 2, 1877, for $1683.83, with interest from that date; and that the judgment declared that it was a lien on the land attached.

The bill further alleges, that at the time of the execution of the four notes, and afterwards, and up to and after the 1st of August, 1876, and at the time of the levy of the three attachments, Todd was the owner of an undivided half interest in a plantation called the Bellevue plantation, in Chicot County, with certain exceptions, which plantation contained the land mentioned as having been so attached, and other land; that at the July term, 1876, of the Circuit Court of Chicot County, judgments were obtained against Todd in favor of J. McMurray & Co. and of Jurey & Gillis; that a decree in favor of one Halliday, enforceable by execution,

already existed against him in that court, and other creditors of his were pressing him; that, finding himself thus in failing circumstances, he conspired with the defendant Smith, who was his son-in-law, to transfer to Smith a large and valuable part of his property, to save it from his creditors; that, in pursuance of that design, notwithstanding Smith was largely indebted to Todd, after January, 1869, for unpaid purchase money for the half interest in the Bellevue plantation, which Smith had purchased from Todd, and although Smith resided on that plantation, and controlled the crops raised on it, and his services had been taken into account in the adjustments and payments from time to time between the parties, and Smith had kept another manager almost the entire time on a plantation of Todd's called Yellow Bayou, and there was in fact nothing due from Todd to Smith for services, Smith, in pursuance of such fraudulent purpose, brought suit against Todd in the Circuit Court of Chicot County, on the 4th of August, 1876, for the sum of $8000, for pretended services not paid for, which had been rendered by Smith for Todd, in managing his Yellow Bayou plantation and his half interest in the Bellevue plantation, from January, 1869, to that date, at $1000 a year and interest, and caused an attachment to be issued, which was levied, on August 8, 1876, by direction of Smith, on all the personal property of Todd on the two plantations; that on the 14th of August, 1876, the Yellow Bayou plantation was sold, to satisfy Halliday's decree; that after applying its proceeds a balance still remained due to Halliday; that such balance and the McMurray judgments amounted to $1285; that executions were issued on those judgments, and for the balance due Halliday, and on September 28, 1876, to satisfy them, the half interest of Todd in 1200 acres of the Bellevue plantation, being its most valuable part, was sold, and bought in by Smith at less than $3 an acre for an entire interest, when the same was at the time reasonably worth from $20 to $30 an acre; that Todd, in pursuance of his fraudulent scheme, did not redeem the lands from the sale, and Smith afterwards received deeds therefor; that afterwards, on December 19, 1876, Smith directed the sheriff to release to Todd

115 bales of cotton, on which the attachment of Smith had been levied on August 8, 1876, and to attach the interest of Todd in that part of the Bellevue plantation which had been attached in the suits of the plaintiffs, and also to attach some 60 other acres of land which Smith claimed was a part of the Bellevue plantation; that no steps were taken in the attachment suit of Smith against Todd at the January term, 1877, of the Chicot Circuit Court, the judgment in favor of Jurey & Gillis having been in the meantime paid off by money raised from the sale of the cotton so released by Smith; that at the July term, 1877, of the Chicot Circuit Court, and after the levy, on June 18, 1877, of the attachments in the suits by the plaintiffs, an appearance was entered by Todd in the suit, and a pretended answer was filed for him to the complaint; that one Mole, in whose charge and custody the property attached in the suit was left, was at the time in charge of the Yellow Bayou plantation, and he and others, as agents of Todd, had for years been in charge of it; that five of the eight years' services charged for by Smith were barred by limitation; that nevertheless no defence was in good faith put in to the suit, the answer not being sworn to and no issue made; that the case was submitted to a jury, and a verdict rendered, and a judgment entered for $8000 against Todd, which declared that it was a lien upon the property levied on under the attachment in the suit, from the date of the levy; and that, on April 1, 1878, the said property was sold and bought in by Smith for the nominal sum of $4055.

The bill further alleges that the property on which the liens of the plaintiffs are declared to rest is reasonably worth a large sum, say $20,000, and more than enough to pay off their demands, if the fraudulent judgment in favor of Smith, and the sale thereunder, should be set aside, and the property be sold at a fair price.

Smith filed an answer to the bill, taking issue on its material allegations, and denying that there was anything collusive or fraudulent in his obtaining his judgment and buying under it the lands in question. The answer also avers that the suit was vigorously contested by Todd; that Smith was justly

entitled, to recover from Todd the whole amount for which the judgment was rendered; and that at the time he acquired title to the lands so purchased, they were subject to two mortgages, one of which was for about $18,000, and the other of which had been foreclosed, and a decree obtained, in October, 1881, fixing a lien on the lands, superior to the title of Smith, for $9743.

The heirs of Todd also put in an answer, taking issue as to the material allegations of the bill, and averring that Smith had had continuously, from about the 1st of January, 1868, the supervision and management of the Yellow Bayou and Bellevue plantations, as long as Todd owned or controlled them, and had never received any compensation for his services before the suit for the $8000 was brought; and that they and each of them believed that the judgment was just; and that the sum was due to Smith from Todd.

Springer, the administrator of Todd, also put in an answer to the same effect as that of Smith.

The bill did not waive an answer on oath, and all three answers were sworn to.

Subsequently, Smith and Springer filed a sworn amendment to their answer, setting up that letters of administration were granted to Springer on the estate of Todd by the Probate Court of Chicot County, on the 4th of August, 1879, and that the demands of the plaintiffs against the estate were not exhibited to the administrator, as required by the statute, before the end of two years from the granting of/the letters.

The question to be decided in this case is exclusively one of fact, and concerns the honesty and validity of the claim of Smith against Todd. The claim is supported by a judgment, a copy of which is contained in the record. The complaint in the suit was sworn to by Smith on the 4th of August, 1876. The account filed with the complaint states that the $8000 are due for services rendered in the supervision and management of Todd's Yellow Bayou plantation and his half interest in the Bellevue plantation, from January, 1869, to date, at $1000 per annum, and interest. The attachment was levied on the 5th of August, 1876, on cotton and other personal

property and ·on certain land.    On the 25th of July, 1877, Todd filed his answer, denying each and every allegation of the complaint, and on that day the case was tried by a jury, which found a verdict for Smith and assessed his damages at $8000.    The burden of proof is on the plaintiffs in this suit to impeach that judgment.    We do not think they have successfully done it.    It would not be profitable to discuss the evidence.

Much comment is made on the fact that Todd did not plead the statute of limitations of the State to a part of Smith's claim.    But this is not an objection of which the plaintiffs can avail themselves.    Todd was at liberty to ·waive the plea, and there was evidently sufficient in the relations of the parties and in the circumstances of the case to warrant him in doing so.

We have carefully considered the evidence, and the various propositions advanced by the counsel for the appellants in regard to the facts, and are of opinion that the decree of the Circuit Court was right, and that it must be

*Affirmed.*

MR. CHIEF JUSTICE FULLER was not a member of the court when this case was submitted, and took no part in its decision.