BANK OF HENDERSONVILLE v. DOZIER et al.—142 S. W. (2d) 191.

Middle Section. March 16, 1940.

Certiorari Denied by Supreme Court, June 29, 1940.

E. T. Hollins, Jr., of Nashville, for complainant Bank.
Thurman Thompson, of Lewisburg, for defendants.

FAW, P. J. This suit was brought in the Chancery Court of
Marshall County, on November 2, 1938, by the Bank of Henderson-

ville, a Tennessee corporation, as complainant, against Mrs. Z. A. Dozier and Mrs. Caelera Dozier Stammer, both residents of Davidson County, Tennessee; J. Lee Moss, trustee, a resident of Marshall County, Tennessee, and the First National Bank, a corporation, with its offices and principal place of business in Marshall County, Tennessee, as defendants.

Alleging that it is a judgment-creditor of defendant Mrs. Z. A. Dozier, the complainant sought by its bill to obtain a decree of the Chancery Court adjudging that certain trust deeds executed by defendant Mrs. Dozier to defendant J. Lee Moss, trustee, and purporting to secure notes executed by defendant Mrs. Dozier to her daughter, the defendant Mrs. Stammer, were fraudulent and void, as against the complainant, and ordering a sale of the land described in said trust deeds to satisfy the aforesaid judgment of the complainant against defendant Mrs. Dozier.

Complainant Bank of Hendersonville and defendant Mrs. Stammer each prayed an appeal from the decree of the Chancery Court, and their respective appeals were granted and perfected. The parties will be designated herein as complainant and defendants as they appeared on the record below.

A preliminary statement, in *chronological order,* of the several transactions out of which this suit arose will simplify the task of stating the issues for decision here.

On July 24, 1935, J. P. Dozier, J. O. Dozier and defendant Mrs. Z. A. Dozier executed a note to complainant Bank for money borrowed from complainant. The amount of said note does not appear in the record, except as indicated by the judgment thereafter rendered on same as hereinafter stated; but the amount of this *note* is now immaterial. The inference from the record is that defendant Mrs. Dozier appeared on said note as a joint maker thereof, but the proof is that, as between the makers of said note, defendant Mrs. Dozier was a surety for her son, J. P. Dozier, for whose benefit the money was borrowed.

On November 17, 1936, defendant Mrs. Dozier (a widow) conveyed, in trust with power of sale on default, to defendant J. Lee Moss, as trustee, two described tracts of land in Marshall County, Tennessee, containing approximately one hundred and fifty-three acres, to secure a principal note of $5,500 due on or before five years after its date, and five "interest notes" for $330 each, due in one, two, three, four and five years, respectively, after their date, each of which notes (both for principal and interest) was of even date with said trust deed, and was payable to the order of "Miss Caelera Dozier." Said trust deed was registered on November 19, 1936, in the Register's Office of Marshall County, Tennessee, and re-registered in the same office on May 20, 1938.

On June 21, 1938, defendant Mrs. Z. A. Dozier conveyed in trust, with power of sale on default, to defendant J. Lee Moss, as trustee,

two described tracts of land in Marshall County, Tennessee, containing approximately one hundred and fifty-three acres (and being the same two tracts of land described in the aforesaid trust deed of date November 17, 1936), to secure an indebtedness to "Mrs. Caelera Dozier Stammer" evidenced by the promissory note of Mrs. Z. A. Dozier for $5,500 of even date with said trust deed, with interest from its date, payable annually. Said last mentioned trust deed was registered on the day of its execution, viz.: June 21, 1938, in the Register's Office of Marshall County, Tennessee.

On or about June 21, 1938, defendant Mrs. Stammer borrowed $1,500 from defendant First National Bank and executed her note for that sum to said Bank, and contemporaneously therewith delivered to said Bank, as collateral security for said loan, the aforesaid note of defendant Mrs. Dozier for $5,500 of date June 21, 1938, together with the trust deed securing same.

On October 14, 1938, complainant Bank of Hendersonville recovered a judgment on the aforesaid note of July 24, 1935, against Mrs. Z. A. Dozier (defendant herein), J. P. Dozier and J. O. Dozier, for $466.23 and $5.50 costs, in the Court of General Sessions of Davidson County, Tennessee, from which judgment there was no appeal, and execution thereon was duly issued on October 19, 1938, and was returned "no property found" by the Sheriff of Davidson County, Tennessee.

It appears from the pleadings and proof, without dispute, that "Miss Caelera Dozier," described in the aforesaid trust deed of date November 17, 1936, as the payee of the notes thereby secured, is the same person as "Mrs. Caelera Dozier Stammer" described in said trust deed of date June 21, 1938, as the payee of the notes thereby secured, and who, by the latter name, is made a defendant to the bill in this case.

Mrs. Stammer's undisputed explanation of the above-mentioned variance in her name is, in substance, that her maiden name was Caelera Dozier; that, at the time of the execution of both of the aforesaid trust deeds, her real name was, and it is now, Mrs. Caelera Dozier Stammer; that she has been separated from her "former husband" (Stammer) for many years; that "she is frequently called and referred to by her acquaintances by either name"; that she has no particular preference about the matter, and "answers to either name"; and that the draftsman of the trust deed of November 17, 1936, referred to her therein as "Miss Caelera Dozier," which (for the reasons above stated) was not unusual.

In its original bill, complainant Bank of Hendersonville set forth the aforesaid judgment of the Court of General Sessions against defendant Mrs. Dozier in favor of the complainant, rendered on October 14, 1936, founded on said note of July 24, 1935, and the execution by Mrs. Dozier of the aforesaid two trust deeds upon the

two tracts of land in Marshall County, with the full description of the lands and of the debts which said trust deeds purported to secure, and complainant alleged that "both of said conveyances were made and contrived of fraud, covin, collusion and guile to the intent and purpose to delay, hinder and defraud the creditors of the said Mrs. Z. A. Dozier of their just and lawful debts; and especially to delay, hinder and defraud complainant of its said just debt"; that "the said Mrs. Caelera Dozier Stammer took said conveyances from her said codefendant well knowing the fraudulent purposes and character thereof, and with intent to aid the said Mrs. Z. A. Dozier, to hinder, delay and defraud her creditors, especially complainant, of their just debts"; that "said conveyances were collusively made, and that there is a secret agreement between the said defendants whereunder the said Mrs. Caelera Dozier Stammer is to hold the notes secured by said deeds of trust for the benefit of said Mrs. Z. A. Dozier."

Complainant further alleged in its original bill that Mrs. Z. A. Dozier, J. P. Dozier, and J. O. Dozier have no property subject to execution at law; that "defendant Mrs. Z. A. Dozier is an old lady with no income or means of paying off any mortgage on said property and that she has no other property except the two tracts of land" described in said two trust deeds.

It is further alleged in complainant's bill that the recitals in each of said two trust deeds that it was made to secure the sum of $5,500 owed by Mrs. Dozier to Mrs. Stammer were "absolutely false"; that "no cash at all was paid by the said Mrs. Caelera Dozier Stammer to the said Mrs. Dozier, and especially was $11,000.00 not paid as recited in said deeds of trust"; "that said deeds of trust were mere devices in furtherance of the covin, collusion and fraud whereby the defendants were contriving to hinder and delay complainant"; that said described tracts of land were free and unincumbered at the time the said first deed of trust was executed and at the time complainant loaned said money to the said Mrs. Z. A. Dozier et als.; and that "said two tracts of land are assessed for taxation in the Trustee's office in Marshall County, Tennessee, at the value of $4,000.00, and complainant is informed and therefore alleges that this is about the true value of said land."

It is further alleged in the bill that said first deed of trust was executed on November 17, 1936, but same was not at that time recorded and that it was not recorded at all until complainant was insisting that its debt be paid.

It is also alleged in the bill that the defendant First National Bank is holding all of said notes, described in both of said deeds of trust, both principal and interest, as collateral security for a loan made by the said Bank to the said Mrs. Caelera Dozier Stammer of date June ——, 1938, in the amount of about $1,500, same being

due and payable twelve months after said date, and that defendant First National Bank is the holder of said two deeds of trust.

After the usual prayer for process and waiver of answers on oath, the complainant prayed that it have a decree against the defendant Mrs. Z. A. Dozier for the amount due it as shown in the bill, principal and interest, court costs and the costs of this suit; that said conveyances to the said J. Lee Moss, trustee, and said notes to Mrs. Caelera Dozier Stammer be decreed to be fraudulent, null and void as against complainant and be set aside; that said tract of land be sold on a credit of not less than six nor more than twenty-four months, and in bar of all equity and right of redemption, and that the proceeds of said sale be applied to satisfy any claim that the said First National Bank might have under said deed of trust and to satisfy the debt of complainant, and complainant prayed for "all such other further and general relief as it may be entitled to on the facts as alleged and proved."

There was also included in the prayer of complainant's bill a prayer for a writ of attachment to be levied on the lands described in the bill in order to secure and impound said property, and that an injunction issue to prohibit and restrain the defendants and their agents from selling, encumbering, or in any manner disposing of said property or said notes or any part of same; but neither an attachment nor an injunction appears in the record, and there is a notation by the Clerk and Master in the transcript as follows: "Fiat for attachment and injunction not applied for; writs not issued."

All of the defendants answered the complainant's bill. Mrs. Dozier and Mrs. Stammer each filed a separate answer, and the First National Bank and J. Lee Moss, trustee, filed a "joint and separate answer."

In their respective answers, Mrs. Dozier and Mrs. Stammer admit the execution of the aforesaid two trust deeds to J. Lee Moss, trustee. They state, however, that the note for $5,500 secured by the trust deed of June 21, 1938, was merely a renewal of the note for $5,500 secured by the trust deed of November 17, 1936, and there is no claim by any of the defendants that Mrs. Dozier owes Mrs. Stammer $11,000.

Mrs. Dozier and Mrs. Stammer each denied, in positive and unequivocal terms, that either of the aforesaid trust deeds was fraudulent in character or was made for any fraudulent purpose, or with any intent to hinder or delay the complainant or any other creditors of Mrs. Dozier in the collection of their debts; and they deny that there was any agreement between Mrs. Dozier and Mrs. Stammer whereby Mrs. Stammer agreed to hold the aforesaid notes or deeds of trust for the benefit of Mrs. Dozier; and they allege that said conveyances to J. Lee Moss, trustee, were executed to secure a bona fide indebtedness in the sum of $5,500 as recited therein.

Mrs. Stammer further denies that she took said conveyances from Mrs. Dozier knowing of any fraudulent purposes or character thereof, or with any intent to aid Mrs. Dozier in hindering or delaying the complainant or any other creditors of Mrs. Dozier in the collection of their debts.

We quote further admissions and allegations of the answer of defendant Mrs. Stammer, as follows:

"This defendant admits that the said conveyances recite that they are made to secure the sum of Five Thousand Five Hundred Dollars ($5,500.00) owed by the said Mrs. Z. A. Dozier to her; but she denies that these recitals, or any of them, are false; but on the contrary, she alleges and avers that on the date of November 17, 1936 (which was the date of the execution and delivery of the conveyance, a copy of which is made exhibit "A" to this answer), the said Mrs. Z. A. Dozier was justly indebted to her in the sum of Five Thousand Five Hundred Dollars ($5,500.00) for money advanced by this defendant to her said co-defendant, and that Four Thousand Dollars ($4,000.00) of said amount was evidenced by a certain promissory note signed by the said Mrs. Z. A. Dozier on and bearing date of November 3, 1933, more than one year and eight months before the alleged date of the alleged execution of the alleged note mentioned in paragraph II, of the complainant's bill. Said note is herewith filed as exhibit 'B' to this answer and made a part thereof, but need not be copied herein.

"The note mentioned and described in exhibit 'A' to this answer was given on the 17th day of November, 1936, in renewal of the said note made exhibit 'B' to this answer, and also included other and further amounts and advancements, made by this defendant to her said co-defendant, all of which was bona fide indebtedness, in the sum of fifteen hundred dollars, making a total sum of Five Thousand Five Hundred Dollars ($5,500.00) as set out in the conveyance, copied as exhibit 'A' to this answer.

"The note in the sum of Five Thousand Five Hundred Dollars ($5,500.00) dated June 21, 1938, mentioned and described in the conveyance filed as exhibit 'A' to the separate answer of the defendant, First National Bank of Lewisburg (an exact copy of which is herewith filed as exhibit 'C' to this answer and made a part thereof, but need not be copied herein) was given in renewal of the aforesaid note in the sum of Five Thousand Five Hundred Dollars ($5,500.00) described in and secured by the aforesaid instrument copied as exhibit 'A' to this answer, and the mortgage or deed of trust filed as exhibit 'A' to the separate answer of the First National Bank of Lewisburg, was executed and delivered on the same date to secure said note."

Both Mrs. Dozier and Mrs. Stammer admitted, in their respective answers, the truth of the allegations in complainant's bill that $4,000

"is about the true value of said land" conveyed by the two trust deeds to J. Lee Moss, trustee.

So far as deemed material to the present inquiry, the answer of the defendants First National Bank and J. Lee Moss, trustee, is as follows:

"They admit that on the date of June 21, 1938, defendant, Mrs. Z. A. Dozier executed and delivered to her daughter the defendant, Caelera Dozier Stammer, the deed of trust mentioned and referred to near the top of page 3, of the original bill, and that it was recorded in Trust Deed Book, M-3 at page 177, in the Register's Office of Marshall County, Tennessee, but they deny that said conveyance was made and contrived of fraud, covin, collusion and guile to the intent and purpose to delay, hinder and defraud the creditors of the said Mrs. Z. A. Dozier. And they allege and aver instead that the said defendant Caelera Dozier Stammer desired to borrow fifteen hundred dollars from this Bank, and offered to secure the said loan, by transferring to said Bank the deed of trust and the note secured thereby, dated November 17, 1936. And the said Bank being willing to make said loan, suggested by one of its officials that it would require the aforesaid note, and the deed of trust securing same, to be renewed, all of which was complied with by the defendant, Mrs. Z. A. Dozier and her said daughter, after which the loan was completed, and the new deed of trust and the note secured thereby were given to the Bank as collateral to secure the note of the defendant, Caelera Dozier Stammer, for the amount aforesaid, all of which was done in good faith, and the said deed of trust is herewith filed as exhibit "A" to this answer, and a copy of the note secured thereby is filed as exhibit "B," and a copy of the note signed by the defendant, Caelera Dozier Stammer, in the amount of $1,500.00, is filed as exhibit "C" to this answer. The defendant, Bank, therefore alleges that it is an innocent holder of the aforesaid negotiable instruments, for a valuable consideration, without notice of the matters alleged in the original bill. And they deny the existence of any secret agreement between the parties. . . .

"These defendants admit that the valuation placed on the lands described in the original bill, in paragraph III, of said bill is correct."

(The admission in the last sentence of the above quotation refers to the allegation in the complainant's original bill that $4,000 "is about the true value of said land.")

In their respective answers, each of the defendants denied that the trust deed of November 17, 1936, was not registered until May 20, 1938, and alleged that it was duly registered on November 19, 1936.

The depositions of the defendant Mrs. Stammer and one J. E. Saunders were taken and filed by the complainant, and thereafter

the complainant, by leave of the Court, filed an amended and supplemental bill which (after the recital of the pleading previously filed) contained allegations as follows:

"And now, by leave of your Honor, complainant brings this amended and supplemental bill into your Honor's Court and avers and alleges that the consideration for said $4,000.00 note set forth in the defendant's, Mrs. Stammer's, answer, if any consideration thereby, was for things and debts incurred or advanced more than six years before the execution of said $4,000.00 note, to-wit, November 3rd, 1933, and it relies on and pleads the Statute of Limitations of six years in bar of Mrs. Caelera Dozier Stammer's right to rely on said $4,000.00 note, or any part of same, as a valid claim against the said Mrs. Z. A. Dozier and against complainant's right to set aside said conveyances."

The prayer of said amended and supplemental bill (after the prayer for process and waiver of answer on oath) was "that at the hearing of this cause the interest of the defendant, Mrs. Z. A. Dozier, in the property described in complainant's original bill be sold, as prayed in the original bill, in satisfaction of complainant's indebtedness against Mrs. Z. A. Dozier"; and "that complainant may have such other and further relief as it may be entitled to."

The defendants filed a joint and separate answer to the complainant's amended and supplemental bill in which (1) they deny that the complainant has any right to plead the Statute of Limitations for the defendant Mrs. Z. A. Dozier, and they allege that, if it is true that some of the items of indebtedness included in the note for $4,000 (referring to the note for $4,000 mentioned in the answer of Mrs. Stammer to the original bill) were made more than six years before the signing of the said note on November 3, 1933, it is still a matter that does not concern the complainant, in that, the defendant Mrs. Dozier would not, if a suit had been brought against her on said items by Mrs. Stammer, have been obliged to have pleaded the Statute of Limitations, and that no other person has the right to plead the Statute of Limitations in her behalf; and (2) they allege that Mrs. Dozier had a right to make a new promise to pay items barred by the Statute of Limitations, and that the signing by her of said $4,000 note on November 3, 1933, constituted a new promise to pay, of which complainant has no right to complain, for the reason that said new promise to pay, as evidenced by said note in the amount of $4,000, was signed November 3, 1933, which was one year, eight months and twenty-one days before the said Mrs. Z. A. Dozier became indebted to the complainant as alleged in the original bill.

Upon the aforesaid pleadings and proof, together with a stipulation of counsel showing the facts hereinbefore stated with respect to the judgment of the Court of General Sessions of Davidson County against Mrs. Dozier and others, the cause was heard by the Honor-

able T. L. Coleman, Circuit Judge, sitting as Chancellor by interchange with Chancellor Lytle, and the Court filed a written opinion and finding of facts which was embraced in his final decree, which decree was as follows:

"This cause was heard by the Court on the 21st day of March, 1939, on the whole record, and was taken under advisement, and thereafter on the 27th day of March, the following opinion was filed by the Court, to-wit:—

" 'This cause was heard by the Court on the 21st day of March, 1939, on the pleadings and proof and argument of counsel, and taken under advisement.

" 'The Court finds and holds as follows:

" 'On November 3, 1933, the defendant, Mrs. Z. A. Dozier, owed her co-defendant in this cause, Mrs. Caelera Dozier Stammer, a bona fide debt to the amount of $4,000.00 as evidenced by a promissory note of that date.

" 'On November 17, 1936, said indebtedness, with interest, amounted to $4,731.33. On this date Mrs. Dozier executed a deed of trust to the defendant, J. Lee Moss, as trustee, to secure a note in the principal sum of $5,500.00 as an indebtedness to said Mrs. Caelera Dozier Stammer, which instrument was recorded on November 19, 1936, in Trust Deed Book K-3, page 250, and again recorded on the 20th day of May, 1938, in Trust Deed Book M-3, page 160, Register's Office of Marshall County, Tennessee. This deed of trust conveyed to said Trustee the two tracts of land described in the original bill in this cause, containing 113 acres, more or less, and 31 acres and 115 poles, more or less.

" 'On June 21, 1938, said Mrs. Dozier executed another trust deed conveying the same realty to the same trustee to secure the same alleged indebtedness in the principal sum of $5,500.00, to said Mrs. Stammer. This instrument was recorded on said date of June 21, 1938, in said Trust Deed Book M-3, at page 177.

" 'This last conveyance was executed by said Mrs. Dozier as renewal of the former, which was executed by her on November 17, 1936. From said date to June 21, 1938, there was a period of time of one year, seven months and four days, and for such period of time no amount of interest was taken into consideration by the parties, and none was added, charged or included. Interest on said principal sum of $5,500.00 was disregarded.

" 'Said Mrs. Dozier was insolvent at the time she executed said conveyances, and this fact was known to said Mrs. Stammer. When Mrs. Dozier executed the first trust deed conveyance (Nov. 17, 1936) there was a difference of $768.67 between the indebtedness which she actually and bona fide owed Mrs. Stammer and the $5,500.00 purported to be secured by said conveyance. Said sum of $768.67 so added to the original valid indebtedness did not exist as a debt of

Mrs. Dozier to Mrs. Stammer. There was no fair consideration for the same, and said conveyances to that extent are voluntary and fraudulent in law as to the complainant.

" 'The Court finds and holds that Mrs. Stammer is not entitled to have interest on the indebtedness of $4,731.33, as against the rights of the complainant as a judgment creditor of Mrs. Dozier.

" 'The complainant is entitled to have a judgment of this Court in this cause against the defendant, Mrs. Z. A. Dozier, for $478.91, and the costs of this cause, including $5.50 cost of the Court of General Sessions of Davidson County, Tennessee. Said judgment is a lien, and will be so declared, on the said lands of the said defendant, subject to the rights and lien of the defendants, Mrs. Caelera Dozier Stammer, and the defendant, the First National Bank of Lewisburg, Tennessee, as holders of the indebtedness to the amount and to the extent of $4,731.33 secured by the deeds of trust to J. Lee Moss, Trustee.

" 'Decree will be entered according to the above finding and opinion of the Court.

" 'This March 27, 1939.'

"The cause coming on to be heard again on the whole record it was now ordered that the foregoing opinion or finding filed March 27th, be made the decree of the Court as to all the facts stated and found therein and the conclusions set forth therein; and it was now ordered and decreed specifically as follows:—

"That the complainant Bank of Hendersonville have and recover of Mrs. Z. A. Dozier the sum of four hundred eighty-four dollars and forty-one cents ($484.41), which sum includes the sum of $5.50 as costs of suit in the General Sessions Court, and that the said complainant also recover of the said defendant the costs of this cause now and heretofore accrued; that the defendant Mrs. Caelera Dozier Stammer, as the beneficiary in the trust deed of date June 21, 1938, of record in Trust Deed Book M-3, page 177, was and is entitled to, and holds, a valid lien on the realty described in the original bill and in the said trust deed securing a debt in the sum of forty-seven hundred thirty-one dollars and thirty-three cents ($4,731.33), as of this date, the same being a portion of the principal amount of a note, secured by said trust deed, in the principal sum of fifty-five hundred dollars, which said note is now the property of The First National Bank of Lewisburg as collateral holder for the security of a note of the said Bank, executed by the said defendant Stammer, in the principal sum of fifteen hundred fifty dollars of date June 21, 1938, due in twelve months, bearing interest from date, the said last described note being a valid debt of Mrs. Stammer for borrowed money, and the said Bank being the holder in due course for value, before maturity, of the said collateral note; that the complainant Bank of Hendersonville, a creditor of Mrs. Z. A. Dozier, in the

manner, form and amount as aforesaid, is entitled to a lien on the realty referred to herein, for the security and payment of its said judgment, herein rendered, subject to the rights of Caelera Dozier Stammer and First National Bank of Lewisburg, as herein established, and that a lien be (and is hereby) decreed and established on said land accordingly, the said realty being described as follows:"

(Here follows the description of the land by metes and bounds.)

"Leave is granted the complainant to make application by motion for a decree of sale whereby this realty may be sold under the prayer of its original bill, for the satisfaction of the judgment, subject to the rights of the defendants Caelera Dozier Stammer and The First National Bank of Lewisburg."

The complainant Bank of Hendersonville and the defendant Mrs. Stammer each prayed, obtained and perfected an appeal from the aforesaid decree of the Chancery Court to this Court, and has assigned errors here.

The first assignment of error filed by the complainant Bank of Hendersonville is that "the Chancellor erred in finding that on November 3, 1933, the defendant, Mrs. Z. A. Dozier, owed her co-defendant, Mrs. Caelera Dozier Stammer, a bona fide debt in the amount of $4,000.00."

And the complainant's second assignment of error is that, "the Chancellor erred in holding that the conveyances from Mrs. Z. A. Dozier to J. Lee Moss, Trustee, were not fraudulent in fact and void as to the complainant."

Complainant's first and second assignments of error, supra, are so inter-related that they may be considered together.

Aside from a stipulation with respect to the judgment of the General Sessions Court of Davidson County in favor of the complainant and against Mrs. Z. A. Dozier and others, all of the proof directed to the material issues made by the pleadings is found in the deposition of defendant Mrs. Stammer and the documentary exhibits thereto.

Notwithstanding the fact that the complainant took and read the deposition of Mrs. Stammer in its own behalf, it is said, in the brief for complainant, that "Mrs. Stammer's deposition is filled with inconsistencies, evasions, impossible dealings, and reveals every badge of fraud known to the law books," and much of the argument offered in support of complainant's first and second assignments of error cannot be reasonably interpreted otherwise than as an attack upon the credibility of Mrs. Stammer as a witness. This is not permissible. One cannot discredit the truthful character of his own witness; but this rule does not deprive him of the right to prove a different state of facts with respect to particular matters by other witnesses, even though the result is a contradiction between his witnesses. Jones v. Carnes, 2 Yerg., 70; McLarin v. State, 4

Humph., 381, 382; History of a Lawsuit (4 Ed.), (Martin), page 282; Abbott's Civil Jury Trials (3 Ed.), page 274; 3 Ency. of Evidence, pages 530-533.

Where the testimony of a witness is not contradicted, either by direct evidence or by circumstances inconsistent with its truth, it must be taken as true. Nashville C. & St. L. Railway v. Sutton, 21 Tenn. App., 31, 43, 104 S. W. (2d) 834; DeKalb County v. Tenn. Electric Power Co., 17 Tenn. App., 343, 350, 67 S. W. (2d) 555; Standard Oil Co. of La. v. Roach, 19 Tenn. App., 661, 674, 94 S. W. (2d), 63; Frank v. Wright, 140 Tenn., 535, 541, 205 S. W., 434; Biggs v. Johnson, 1 Shan. Cas., 622, 628.

And "the testimony of a party to the cause may not be disregarded where there is no contradiction or impeachment, either direct or circumstantial, and such testimony is unequivocal." 6 Jones on Evidence (2 Ed.), page 4891; First National Bank of Centreville v. Wilkins, 11 Tenn. App., 9, 18; Chance v. Kinsella, 310 Ill. 515, 142 N. E., 194, 197; McKeever v. Dittman, Tex. Civ. App., 262 S. W., 1054, 1058; Deboe v. Brown, 198 Ky., 275, 248 S. W., 855; Powers v. Wilson, 203 App. Div., 232, 196 N. Y. S., 600, 604.

The above stated rules with respect to the effect of the uncontradicted testimony of a witness apply even more strongly where a party to the cause is *called as a witness by his adversary*. And "the opposing party waives all objection to the competency of a party to a civil suit as a witness by calling him, and makes him a competent witness in his own behalf." 5 Jones on Evidence (2 Ed.), page 3994, sec. 2125; 7 Acc. Ency of Evidence, page 35.

"A party is not necessarily concluded by the testimony of his adversary whom he calls as a witness, but all the testimony of such witness, whether favorable or unfavorable, must receive equal consideration, and be accorded such weight as it is entitled to when its reasonableness and other tests of credibility are taken into consideration. Nevertheless a party upon whom it is incumbent to prove an alleged fact cannot call his adversary as a witness as to that fact, elicit testimony from him to the effect that such alleged fact has no existence, and then call upon the jury to discredit the evidence of such adversary merely because he is interested as a party, and to base upon the assumed falsity of his evidence an affirmative finding of the existence of such alleged fact, without any other evidence of its existence, or from which it may be inferred." 23 C. J., pages 50-51, sec. 1793.

It is also stated in the brief, for support of complainant's second assignment of error, supra, that "the burden of proof was on Mrs. Stammer to show by clear and satisfactory evidence, the justness of her debt and that the mortgages were not made to defraud Mrs. Dozier's creditors."

■ The assumption that the burden of proof was on Mrs. Stammer, as stated in the above quotation from the complainant's brief, is contrary to the established rule in Tennessee. On this record, the burden of proving that the conveyances in question were fraudulent, and not made to secure a bona fide indebtedness, rested upon the complainant. City National Bank v. Barnes, 164 Tenn., 450, 51 S. W. (2d), 503; Citizens Bank & Trust Co. v. White, 12 Tenn. App., 583, 590, 591; Calloway v. Witt, 21 Tenn. App., 74, 81, 105 S. W. (2d), 123.

We find no admissions in the answers of the defendants which shifted the burden of proof to the defendants, as in the cases of Yost v. Hudiburg, 2 Lea, 627, and Farmers Bank v. Farrar, 4 Tenn. App., 186.

■ It will be observed that the deeds of trust attacked by the bill in the instant case were not absolute conveyances of the land therein described, but were prima facie a "preference" in favor of one creditor.

■ "Where there is merely a preference, even a jury is not at liberty to deduce fraud from that which the law presumes honest." Cleveland National Bank v. Arnwine, 5 Tenn. App., 416, 433.

■ "If an honest debt be owing by one brother to another, or by one relative to any other relative, he has the right to secure it in preference to his other creditors by a conveyance of his property, if done in good faith." Warren v. Hinson, Tenn. Ch. App., 52 S. W., 498, 499, citing Nelson v. Kinney, 93 Tenn., 428, 432, 25 S. W. 100.

■ "An insolvent debtor has the right to prefer one creditor over another, and the giving of such preference of itself carries no presumption of fraud, or that the preferred debt does not in fact exist. The burden of proving the fraud charged in the bill was upon complainants." Warren v. Hinson, supra, 52 S. W., at page 500.

The determinative facts of the instant case are disclosed by the deposition of defendant Mrs. Stammer which, as before stated, was taken by and on behalf of the complainant.

At the time Mrs. Stammer's deposition was taken (in January and February, 1939), she was forty-seven years of age, and her mother, the defendant Mrs. Dozier, was seventy-four years of age. Mrs. Stammer (with her two sons) and Mrs. Dozier have "resided together" since the year of 1916. One of Mrs. Dozier's sons, J. O. Dozier, lived with them.

Mrs. Dozier's husband, Z. A. Dozier, died intestate in September, 1917, and left surviving him his widow, the defendant Mrs. Dozier, and three children, viz.: Mrs. Stammer, J. P. Dozier and J. O. Dozier. Z. A. Dozier's brother, W. F. Dozier, and his son J. P. Dozier, qualified, in Marshall County, as his administrators, and, in 1918,

"wound up" his estate, which amounted to approximately thirty thousand dollars, and distributed it between his said three children.

Defendant Mrs. Dozier waived and renounced "all of her rights" in the estate of her deceased husband. With respect to such waiver and renunciation by Mrs. Dozier, we quote from the undisputed testimony of Mrs. Stammer as follows:

"Q. When did your father die? A. In Sept., 1917, in Marshall County, Tennessee.

"Q. The farm described in the original bill was left to your Mother was it not? A. That is property that my Mother inherited from another source.

"Q. Did your Father leave a will? A. No.

"Q. What was the extent of his estate? A. Something like $30,000.00.

"Q. Your Mother received her part of your father's estate, did she not? A. She did not claim any part.

"Q. Did she give her part to you and your two brothers? A. It was equally divided among us three. Mother didn't claim any part of father's estate.

"Q. Why didn't she claim any part? A. She didn't need it, she had her own home.

"Q. She had nothing except this farm did she? A. She had cows, pigs, and a team.

"Q. Then all she had was the farm described in the original bill and a few cows, pigs and a team? A. Yes, that is correct.

"Q. Didn't your Mother need money to live on? A. She got that from her cows, chickens and pigs.

"Q. Who suggested to your Mother that she waive all of her rights in your father's estate? A. No one.

"Q. Didn't you and your brothers agree with her that if she would waive all her rights in your father's estate that you all would take care of her? A. No, there was no agreement.

"Q. If there was nothing said about it how and when did you learn that your Mother was waiving her rights? A. When the estate was settled she didn't claim any part at all of the estate. She told the administrator she didn't claim any part.

"Q. Who was the administrator? A. W. F. Dozier and J. P. Dozier.

"Q. Who is W. F. Dozier? A. He was a brother of the deceased, Z. A. Dozier, and J. P. Dozier is my brother.

"Q. Did you hear her tell the administrators that she was not claiming her part of her husband's estate? A. Yes.

"Q. How long was that after your father's death? A. It was in Nov. after he died in Sept.

"Q. You knew before then that she was making no claim, did you

not? A. Well, I heard my father ask her what she wanted of his estate and she told him nothing, that she had her home.

"Q. How long was that before your father's death? A. Just a few weeks before he died.

"Q. Did you discuss the matter with your Mother after that? A. No, it wasn't any of my business.

"Q. Didn't you make any objection to your mother giving up her whole inheritance to you and your brothers? A. I had nothing to do with that, that didn't concern me, that was her affairs.

"Q. You thought that was a rather unwise thing for her to do did you not? A. I thought she should take part of it but she didn't claim it.

"Q. Did your brothers object to her waiving her right in the estate? A. They wanted her to take part, but she wouldn't.

"Q. Did you tell her she ought to take her part? A. Yes, I told her she was entitled to it.

"Q. When did you tell her that she ought to take her part? A. When they wound up the estate.

"Q. When did they wind up the estate? A. In 1918.

"Q. You were living with your Mother at the time of your father's death, were you not? A. Yes."

After the death of Z. A. Dozier in September, 1917, Mrs. Stammer (with her two sons), Mrs. Dozier and J. O. Dozier continued to live in the home belonging to Mrs. Dozier on the land involved in this litigation until the year of 1930, when they moved to Hendersonville, in Sumner County, Tennessee, where they lived until the year of 1936, when they moved to Madison, in Davidson County, Tennessee.

During the period between the death of Z. A. Dozier in 1917 and November 3, 1933, Mrs. Dozier became considerably indebted, mainly as surety of her son J. P. Dozier, who was either improvident or unfortunate (or both) in his financial affairs, and Mrs. Stammer loaned Mrs. Dozier $2,250 which was used by the latter in the payment of her said debts. Mrs. Stammer obtained the money to make said loan to her mother, or at least the major part of same, by selling some Government Bonds which she owned, and by "surrendering" her life insurance. The sum thus loaned was deposited by Mrs. Stammer to the credit of Mrs. Dozier in a bank at Chapel Hill, and was checked out by Mrs. Dozier.

During the same period above named, Mrs. Stammer paid for remodeling Mrs. Dozier's residence, the upkeep of the buildings on Mrs. Dozier's farm, and the taxes and insurance thereon, which aggregated $1,750.

On November 3, 1933, Mrs. Dozier executed and delivered to Mrs. Stammer her note of that date, due twelve months after its date for $4,000, which note contains on its face and immediately following the words "Four Thousand Dollars," a recital as follows: "$2,250

of this note is for borrowed money and the bal. of $1,750 is for up-keep of dwelling, fences, taxes and insurance, with interest at 6%."

On November 17, 1936, Mrs. Dozier executed the first of the two trust deeds here in question, to secure a principal note in the sum of $5,500 and five annual interest notes, all payable to Mrs. Stammer. With reference to the amount of the $5,500 note thus executed, Mrs. Stammer was asked and answered as follows:

"Q. Why was this mortgage for $5,500.00 instead of $4,000.00? A. It was a just debt.

"Q. How did you arrive at the figure of $5,500? A. The interest of $4,000.00 for one year would be $240.00 and for three years it would be $720.00, that would make a total of $4,720.00 and the would be, I paid off a loan on her farm to Mr. W. D. Fox between $800.00 and $900.00."

In May, 1938, Mrs. Dozier negotiated a sale of the farm in question to a man named Younger, and, at the instance of Mrs. Stammer, the Register of Marshall County "stamped" a "release" on the margin of the record of said trust deed of November 17, 1936, in order to prepare to clear the title of said land for the purposes of the sale to Younger, but neither Mrs. Stammer (the holder of the secured debt) nor J. Lee Moss, trustee, signed said "release," and Mr. Younger's wife died and he declined to consummate his purchase of Mrs. Dozier's farm; whereupon, pursuant to the advice of a lawyer, Mrs. Stammer had the said trust deed re-registered on May 20, 1938.

On or about June 21, 1938, Mrs. Stammer sought a loan of $1,500, from the defendant First National Bank of Lewisburg, which she wanted for the purpose of paying a balance of a purchase-money debt on land she had bought at Hendersonville, and she offered to defendant Bank, as collateral security, the aforesaid note and trust deed of November 17, 1936. Defendant Bank was willing to make the loan thus requested, and, upon the suggestion of Mr. Moss, president of defendant Bank, that the Bank would accept the collateral offered if the note and deed of trust were renewed, Mrs. Dozier accordingly executed a renewal note, dated June 21, 1938, payable to Caelera Dozier Stammer, and due twelve months after its date, for $5,500, with interest from its date, and also executed the trust deed of the same date (hereinbefore described) to scure said note, which latter trust deed was drawn by R. L. McBride, "one of the men who works in" defendant Bank at Lewisburg.

In the brief for complainant it is asserted that there were eight "badges of fraud proven." We will consider these alleged "badges of fraud" seriatim, in the order stated in complainant's brief.

 (a) "Parties were mother and daughter."

Relationship of the parties is "not a badge of fraud," but "it is a fact which undoubtedly gives greater weight to other circum-

stances, *if any such shall appear,* than otherwise attach to them."
(Italics ours.) Robinson v. Frankel, 85 Tenn., 475, 478, 3 S. W.,
652, 653. See also First National Bank v. Wilkins, 11 Tenn. App.,
9, 16; Calloway v. Witt, 21 Tenn. App., 74, 81, 108 S. W. (2d), 123;
Bank of Maryland v. Thornton, Tenn. Ch. App., 35 S. W., 565, 569.

(b) "Mother in feeble health and controlled by daughter."

According to the only citation to the record for support of this
alleged "badge of fraud," it is sought to base it upon testimony of
Mrs. Stammer as follows:

"Q. She has been in feeble health for a long time, hasn't she,
Mrs. Stammer? A. Yes.

"Q. About how long has she been in feeble condition? A. 12 to
15 years.

"Q During all of that time you have been with your mother,
have you not? A. Yes.

"Q. And you have been managing her affairs for her? A. Well,
I didn't manage them altogether, she would ask me for advice, but
she managed them herself.

"Q. Well, she would always do whatever you told her to do
wouldn't she? A. I didn't dictate."

Moreover, Mrs. Stammer testified that, *contrary to her advice,*
Mrs. Dozier signed notes as surety for J. P. Dozier.

Although Mrs. Dozier was in "feeble health," we find no sufficient
evidence in the record that she was "controlled" by Mrs. Stammer.

(c) "Mortgage to daughter rendered mother insolvent."

We have hereinbefore cited authorities supporting the right of an
insolvent debtor to prefer one creditor over another, if done in good
faith, even though the preferred creditor be a near relative of the
debtor.

Section 7274 of the Code is applicable only to conveyances
made "without a fair consideration," and the burden is on the
complainant to show the absence of a "fair consideration." Com-
merce Union Bank v. Sharber, 20 Tenn. App., 451, 458, 100 S. W.
(2d), 243, and cases there cited.

Section 7273 of the Code provides that a "fair consideration is
given for property, or obligation, . . . when such property or
obligation is received in good faith to secure a present advance or
antecedent debt in amount not disproportionately small as compared
with the value of the property or obligation obtained."

(d) "Mortgage made in secrecy."

The reference to the transcript under (d) indicates that it was
thereby intended to assert that the "mortgage" of November 17,
1936, was "made in secrecy." It was prepared and executed in a
lawyer's office in the city of Nashville, in the presence of several
persons, some of whom were unknown to Mrs. Stammer, and it was
duly recorded in the Register's Office of Marshall County two days

after its execution. "A registered deed imparts the same notice to a creditor as it imparts to a purchaser." Phoenix Mutual Life Insurance Co. v. Kingston Bank, 172 Tenn., 335, 345, 112 S. W. (2d) 381, 384. We find no support in the record for the conclusion that either of the trust deeds involved in this case was prepared or executed in a clandestine or surreptitious manner.

■ (e) "All evidence destroyed."

· The citation to the transcript for support of this alleged "badge of fraud" and other statements in complainant's brief indicate that it refers to the fact that Mrs. Stammer was unable to produce any documentary evidence of the items which made up the aggregate for which said note of November 3, 1933, for $4,000, was executed by Mrs. Dozier.

Mrs. Stammer testified, in substance, that she and her brother, J. O. Dozier, in the presence and with the participation of Mrs. Dozier, in Mrs. Dozier's bedroom, at their home, calculated and ascertained the sum of the indebtedness of Mrs. Dozier to Mrs. Stammer on. the accounts hereinbefore stated, from memoranda which she (Mrs. Stammer) had "on papers and in an old tablet," and some receipts for bills of Mrs. Dozier which she (Mrs. Stammer) had paid; that she and J. O. Dozier made separate calculations and then compared their results; that the sum of such items was a little more than $4,000; that after the note was executed by Mrs. Dozier, the aforesaid memoranda and receipts were thrown in the fire, as they did not suppose it was important to preserve them after the settlement was agreed upon and the note executed accordingly; that their residence at Hendersonville was destroyed by fire on September 1, 1932, and all the bank books and cancelled checks then in their possession were burned in that fire; and that Mrs. Dozier's checks had not been returned by the Chapel Hill Bank which had failed and been closed during the "depression."

The inability of Mrs. Stammer to obtain the aforesaid cancelled checks of Mrs. Dozier from the Chapel Hill bank is explained in a letter from the former Cashier of that Bank, which letter was, without objection, filed as an exhibit to Mrs. Stammer's deposition, and which letter reads as follows:

"First State Bank

"Chapel Hill, Tennessee

"Jan. 21st, 1939.

"Mrs. Caelera Stammer,

"Madison, Tenn. ·

"Dear Caelera: Re: to old bank records.

"These checks and all old books were kept until the Bank was wound up, Mr. H. K. Stephenson was receiver for the Bank of Chapel Hill. When the final payment was made, all dividend checks were mailed to Supt. Banks in Nashville, Tenn. The old checks

which were not called for were destroyed to make room for the new bank equipment. We haven't anything in our possession belonging to old Bank.

"With kindest regards I am

"Yours very truly,

"W. E. Stammer, Cashier."

The fact that Mrs. Stammer was not careful to preserve the loose memoranda, etc., of the sums loaned to and paid for her mother after the antecedent debts were merged into and evidenced by the note for $4,000, does not, in the circumstances disclosed, show that her testimony to the effect that she had them at the time the note was executed, was false. Bank of Commerce & Trust Co. v. Pope, 20 Tenn. App., 652, 660, 103 S. W. (2d), 586.

(f) "Strictly a family transaction."

The record discloses no one other than members of the "family" who was interested in or affected by the "transaction" when the note for $4,000 was executed; hence there was no occasion for any one but members of the "family" to take part in the "transaction." The note to complainant Bank was not executed until approximately one year and eight months thereafter.

(g) "Note given for barred indebtedness."

The citation to the transcript shows that the reference here is to the note of November 3, 1933, for $4,000. If the original indebtedness was "just," as Mrs. Stammer testifies, it is difficult to understand how the willingness of the debtor to waive the Statute of Limitations and execute a new promise would evince a fraudulent design. There is a homely adage among the laity that "an honest man's debt never runs out of date."

(Further reference will be made later to the matter of the Statute of Limitations when we come to dispose of a specific assignment of error devoted to that subject.)

(h) "Daughter did not intend to foreclose mortgage but to protect property for mother's creditors."

(We assume that the word *from* was intended where the word "for" appears in the last quotation above.)

The testimony of Mrs. Stammer pertinent to her intention in taking the mortgage may be seen from excerpts from her deposition, as follows:

"Q. Did she need the money? A. She had to pay J. P.'s notes.

"Q. Were you willing for her to pay her son's notes? A. I had rather see her pay his notes than to see her home tied for his debts.

"Q. You tied her home up with a mortgage didn't you? A. Yes, but that was a just debt.

"Q. Didn't you know she was going to lose her homeplace when she mortgaged it to you? A. I knew she would have a home as long as I had one.

"Q. Did you have this mortgage put on the place to protect her? A. I had it for my own benefit because it was a just debt.

"Q. Were you afraid of some of the other creditors coming in and tying up the place before you could tie it up? A. I knew if I didn't get it, J. P. Dozier would get it.

"Q. What made you think that J. P. Dozier would get it? A. She was on his notes and I knew that his creditors would get the place.

"Q. Did you know that in Nov. 17, 1936, when you had her give you this mortgage? A. I didn't know that this Bank of Hendersonville would but that others would. I knew that he would come back with other notes and she would sign them and they would.

"Q. The reason you had her put this mortgage on in the beginning was to protect her from her present and future creditors? A. That was for my own benefit, I didn't feel like losing what I had paid out.

"Q. When did you intend to foreclose this mortgage? A. I didn't have any intention of foreclosing it.

"Q. Why didn't you have your mother give you a deed to the property? A. I thought there was plenty of time for that after she was gone.

"Q. You never did intend to collect this $4,000.00 note to your mother did you? A. I knew she could never pay it only to give me a mortgage it was the only way.

"Q. Did you tell her at the time just to give you this mortgage and you would hold it and protect the property? A. That was her own suggestion, not mine. . . .

"Q. While your mother was in Sumner County didn't she have money of her own? A. Yes, but she would take every penny to pay J. P. Dozier's notes.

"Q. Were you charging your mother interest on the $4,000.00 note? A. Not at the time until we made out the mortgage.

"Q. Why did you figure interest in the mortgage note? A. She wanted me to get the full amount and it was a just debt.

"Q. Did you figure interest on the $5,500.00 note when your mother executed a new mortgage in June, 1938? A. No, it was just a copy of the first mortgage.

"Q. Why didn't you charge your mother interest on that? A. I figured there would be time enough to figure on $5,500.00 when I took the place over. . . .

"Q. When did you buy J. O. Dozier's interest in your mother's Chapel Hill farm? A. I never bought it.

"Q. Didn't you agree with him that your mother would give you a mortgage and that you would pay J. O. Dozier money for the interest which he expected to receive in the farm? A. J. O., mother and myself all agreed on the mortgage and J. O. didn't expect any interest for she owed it all to me."

We think the natural and reasonable interpretation of Mrs. Stammer's testimony above quoted is that, in view of her mother's advanced age and feeble health, it was not Mrs. Stammer's purpose to foreclose the mortgage as long as her mother lived, but that she fully intended to foreclose it, for the satisfaction of her said debt, after her mother's death. This was a natural and reasonable purpose for a dutiful and affectionate daughter to entertain in the circumstances disclosed by this record, and it was not inconsistent with a lawful purpose to secure the payment of a just debt owing to her by her mother.

It was competent for Mrs. Stammer to testify directly as to her purpose and intention in taking the "mortgage." 24 Am. Juris., page 338, sec. 220.

"The rule is well settled and supported by the weight of modern authority that whenever the motive, belief, or intention of any person is a material fact to be proved under the issue on trial, it is competent to prove it by the direct testimony of such person. Under this rule, therefore, when the issue is the fraud in a conveyance, on the question of fraudulent intent, the parties to the transfer may testify as to their object and intent in making it." 12 R. C. L., page 670, par. 175.

We concur in the Chancellor's finding that "on November 3, 1933, the defendant, Mrs. Z. A. Dozier, owed her co-defendant in this cause, Mrs. Caelera Dozier Stammer, a bona fide debt to the amount of $4,000.00, as evidenced by a promissory note of that date;" and we further find that neither of the two deeds of trust executed by Mrs. Dozier to J. Lee Moss, trustee, and described in the record, was fraudulent, but that said trust deed of date November 17, 1936, was a good and valid conveyance to secure a bona fide indebtedness therein described, and that the said trust deed of June 21, 1938, was merely a renewal of the former trust deed to secure the same indebtedness, and was executed and accepted in good faith and without any fraudulent purpose or design. The complainant's first and second assignments of error are therefore overruled.

The complainant's third assignment of error is that "the Court erred in holding the defendant, Mrs. Stammer was entitled to interest on her note of $4,000.00 in the amount of $731.33."

If, as we have held, Mrs. Stammer had a valid debt against Mrs. Dozier for $4,000, on November 3, 1933, there was no error in the allowance of said interest of which complainant Bank can complain; and its third assignment of error is overruled.

The complainant's fourth (and last) assignment of error is that "the Court erred in not holding that Mrs. Stammer's indebtedness was barred by the Statute of Limitations of six years."

As before stated, complainant Bank, through its amended bill, alleged that the indebtedness of Mrs. Dozier to Mrs. Stammer was

202

barred by the Statute of Limitations of six years, and, upon that allegation, complainant pleaded said statute as a ground for the avoidance of the deeds of trust attacked by complainant's bill.

■■ Generally, the defense of the Statute of Limitations is personal to the debtor, and those in privity of estate with him, but there are exceptions to this rule, which permit, *under some circumstances*, judgment-creditors of the common debtor to plead the bar of the statute on behalf of the debtor. However, such "exceptions" do not go to the extent of permitting a judgment creditor to avail himself of the Statute of Limitations in behalf of his debtor as against another creditor where the debtor has waived the benefit of the statutory limitation by a new promise (as in the instant case). Goff v. Rogers, 71 Ind., 459, 462; Allen v. Smith, 129 U. S., 465, 9 S. Ct., 338, 32 L. Ed., 732, 734; Robertson v. Wade, 17 Tenn. App., 457, 465, 68 S. W. (2d), 487; Bank of Commerce & Trust Co. v. Pope, 20 Tenn. App., 652, 661, 103·S. W. (2d), 586.

In Goff v. Rogers, supra, 71 Ind., at page 462, the Court said: "Whenever there is a moral obligation, which cannot be enforced on account of the provisions of the statute, there the party may waive the benefit of the statute, and the transfer will be valid as against creditors" (citing Bump on Fraudulent Conveyances, 220).

Complainant's fourth assignment of error is overruled.

Defendant Mrs. Stammer assigns as error the holding of the Chancery Court that, "When Mrs. Dozier executed the first trust deed conveyance (November 17, 1936) there was a difference of $768.67 between the indebtedness which she actually and bona fide owed Mrs. Stammer and the $5,500.00 purported to be secured by said conveyance. Said sum of $768.67 so added to the original valid indebtedness, did not exist as a debt of Mrs. Dozier to Mrs. Stammer. There was no fair consideration for the same, and said conveyances to that extent are voluntary and fraudulent in law as to the complainant."

■ The ruling of the Chancellor just quoted from his findings and opinion was, we think, erroneous. We are inclined to the opinion that the learned Chancellor overlooked the undisputed testimony of Mrs. Stammer which we find in her deposition that, in the year of 1935, she paid to Mr. W. D. Fox between $800 and $900 to discharge a lien on Mrs. Dozier's farm, and that this sum was one of the items of indebtedness which made up the amount of the note for $5,500 secured by the trust deed of November 17, 1936. Mrs. Stammer's first assignment of error is sustained.

In her second assignment Mrs. Stammer assigns as error the holding of the Chancellor that, "Mrs. Stammer is not entitled to have interest on the indebtedness of $4731.33, as against the rights of the complainant as a judgment-creditor of Mrs. Dozier."

■ This last stated assignment of Mrs. Stammer is inapplicable and immaterial to the facts of the case as we find them. It results

from our rulings on Mrs. Stammer's first assignment of error, supra, that she had a bona fide debt of $5,500 against Mrs. Dozier, evidenced by Mrs. Dozier's promissory note of November 17, 1936, and secured by the trust deed of that date; but Mrs. Stammer waived the interest on said debt of $5,500 which accrued between November 17, 1936, and June 21, 1938, by the acceptance of the note for $5,500 of date June 21, 1938, and the trust deed securing same of the latter date, and she is now entitled to interest on her said debt of $5,500 only from and after June 21, 1938.

Through her third assignment of error Mrs. Stammer asserts that the Court erred in holding that, "the complainant is entitled to have a judgment of this Court in this cause against the defendant, Mrs. Z. A. Dozier, for $478.91 and the costs of this cause, including $5.50 cost of the Court of General Sessions of Davidson County, Tennessee."

It is sufficient to say, in response to said third assignment of Mrs. Stammer, that Mrs. Dozier did not appeal and has not assigned errors, and Mrs. Stammer has, in law, no interest in the *personal judgment* rendered against Mrs. Dozier which she (Mrs. Stammer) can assert in this case, and her third assignment of error is overruled.

Through her fourth and fifth assignments Mrs. Stammer assigns as error that part of the decree of the Chancery Court whereby a lien was declared on the land described in and conveyed by the said two trust deeds to J. Lee Moss, trustee, and said land was ordered to be sold for the security and payment of the aforesaid personal judgment rendered in this cause against Mrs. Dozier and in favor of complainant Bank, subject to the rights of Caelera Dozier Stammer and First National Bank of Lewisburg, as established in this cause.

We are of the opinion that said fourth and fifth assignments of error are well made. The allegations and the prayer of complainant's bill are distinctly framed upon the theory of a bill to set aside alleged fraudulent conveyances of property, as utterly void, and obtain a sale of the property for the satisfaction of the complainant's judgment against Mrs. Dozier. See Gibson's Suits in Chancery (4 Ed.), sec. 1009.

The complainant's bill is not filed as a bill in aid of a judgment-creditor to subject the equitable interest of the judgment-debtor which cannot be reached by execution at law, and contains neither allegations nor prayers appropriate to such a bill, which is inconsistent with a bill to set aside an alleged fraudulent conveyance, as it is framed upon the theory that the debtor has conveyed the property to secure valid and subsisting debts, without fraud, and the complainant is merely seeking to reach the surplus after the satisfaction of such prior lien debts. See Gibson's Suits in Chancery (4 Ed.), sec. 1018.

■ "The court will not grant relief which is without the scope of the complainant's bill, and not prayed for specifically." Caldwell v. Huffstutter, 173 Tenn., 225, 229, 116 S. W. (2d), 1017, 1019.

■ Moreover, it is alleged in complainant's bill and admitted in the answers of all the defendants that $4,000 "is about the true value of said land." Such an admission in the pleadings is binding on the parties. 5 Wigmore on Evidence (2 Ed.), sec. 2588. It is obvious, that a decree for the sale of Mrs. Dozier's equitable interest in the property would be useless, as the debt secured by the trust deed largely exceeds the value of the land, and the Court will not order the doing of an obviously "vain thing." Mrs. Stammer's fourth and fifth assignmens of error are sustained, and that part of the decree of the Chancery Court challenged by said fourth and fifth assignments is reversed and vacated, and it will be so adjudged and decreed.

The personal judgment against Mrs. Dozier and in favor of complainant Bank for $484.41, and for the costs of this cause, is affirmed. The finding of the Chancery Court that on November 3, 1933, the defendant Mrs. Z. A. Dozier owed her co-defendant in this cause, Mrs. Caelera Dozier Stammer, a bona fide debt of the amount of $4,000, as evidenced by a promissory note of that date, and the finding and decree of the Chancery Court that the said trust deeds executed by Mrs. Dozier to J. Lee Moss, trustee, were, and are, not fraudulent in fact, is affirmed and the complainant's bill, as against the defendants Mrs. Caelera Dozier Stammer and the First National Bank of Lewisburg, and J. Lee Moss, trustee, is dismissed. The costs of the appeal will be adjudged against the complainant Bank of Hendersonville.

Crownover and Felts, JJ., concur.