## ERNEST FRANK *v.* S. O. WRIGHT.

### (*Nashville.* December Term, 1917.)

1. **MASTER AND SERVANT. Tort of servant. Action in course of Employment. Presumption.**

Chauffer may be presumed *prima-facie* to have been acting in course of his employment, where it appears, not only that master was owner of automobile, but also that car was being used as it was normally used in connection with master's business. (*Post, pp.* 538-541.)

2. **EVIDENCE. Acceptance of testimony. Discredit or impeachment.**

Ordinarily testimony of witness, who is not contradicted, impeached, or discredited, must be accepted as true. (*Post, pp.* 541, 542.)

3. **TRIAL. Credibility of witness.**

If a witness be discredited or impeached, fact may not be treated as established as a matter of law, or for purposes of motion for peremptory instructions. (*Post, pp.* 541, 542.)

4. **MASTER AND SERVANT. Injuries by servant. Evidence on material point.**

In action against automobile owner for a death, where declaration averred chauffer was unfit and reckless, and so known to be by defendant owner, owner's testimony, denying knowledge of previous reckless driving by the chauffeur, was not evidence upon an immaterial point. (*Post, p.* 542.)

5. **EVIDENCE. Rejection of testimony. ''Impeaching.''**

Jury may reject uncontradicted testimony of witness on any kind of attack, though not reaching legal requirement of testimony impeaching his veracity; "impeaching" strictly meaning an attack by character evidence against general credit for veracity, and also meaning discrediting the witness by other modes. (*Post, p.* 542.)

6. **WITNESSES. Discredit.**

As tending to discredit witness, jury may consider improbability of his statements of fact as compared with ordinary nature of things, his cross-examination, his ability and willingness to speak the truth, and other criteria. (*Post, pp.* 542, 543.)

Cases cited and approved: Richmond v. Richmond, 18 Tenn., 345, Wilcox v. State, 50 Tenn., 117.

7. **APPEAL AND ERROR. Capricious disregard of testimony.**

Appellate courts, without sufficient reason, will not permit uncontradicted testimony of a witness to be discarded or disregarded arbitrarily or capriciously. (*Post, pp.* 543, 544.)

8. **MASTER AND SERVANT. Scope of employment. Declaration of agent.**

Mere declaration of chauffeur, whose driving killed plaintiff's decedent, that he was on a mission for defendant, his employer, was incompetent to establish his agency in making the trip. (*Post, pp.* 544, 545.)

9. **EVIDENCE. Declaration of servant. Narrative of past occurrence.**

The act done by a servant cannot be qualified or explained by his declaration, amounting to no more than a mere narrative of a past occurrence; he being unauthorized so to bind his master. (*Post, p.* 545.)

10. **EVIDENCE. Declarations of agent. Admissibility in corroboration. Res gestae.**

Though declarations of alleged agent are of themselves incompetent to prove agency, if agency is otherwise *prima-facie* proved, they become admissible in corroboration, where they constitute part of the *res gestae*, and were made at the time of the transaction. (*Post, p.* 545.)

11. **EVIDENCE. Declaration of agent. Res gestae.**

Declaration of negro chauffeur, ten or fifteen minutes after he had struck boy in street, that he was on mission for employer, was not admissible in suit against employer for death, as part of the *res gestae*, to show automobile was operated in employer's business. (*Post, p.* 546.)

12. **EVIDENCE.** "Presumptions of fact." Proof.
"Presumptions of fact" being deductions drawn from particular facts or circumstances proved, raised to take the place of proof, where proofs are present, there is neither foundation nor room for presumption. (*Post, pp.* 546-548.)

13. **APPEAL AND ERROR.** Prejudicial error. Evidence. Statute.
Reception of chauffeur's inadmissible declaration that, when he struck boy, he was on mission for employer, *held* prejudicial error, calling for reversal. notwithstanding Thompson Shannon Code, section 4902a1, though a presumption of his having acted for his employer arose from facts. (*Post. pp.* 546-548.)

LANSDEN, J., dissenting in part.

Acts cited and construed: Acts 1911, ch. 32.

Cases cited and approved: Keller v. Over, 136 Pa., 1; Galpin v. Page, 18 Wall., 350.

Code cited and construed: Sec. 4902a1 (T.-S.).

---

FROM DAVIDSON.

---

Appeal from the Circuit Court of Davidson County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —HON. THOS. E. MATTHEWS, Judge.

KEEHLE & SEAY and A W. STOCKELL, JR., for plaintiff.

W. H. WASHINGTON and J. G. LACKEY, for defendant.

MR. JUSTICE WILLIAMS delivered the opinion of the Court.

This suit was instituted by Wright, as administrator of his thirteen year old son, Henry G. Wright,

to recover damages of Frank because of the death of young Wright, due to injuries inflicted by the automobile of Frank while it was being run on one of the principal streets of Nashville by Mills, the .negro chauffeur of Frank. The circuit court rendered a judgment in favor of the administrator, based upon the verdict of a jury, which judgment was, on appeal, affirmed by the court of civil appeals.

The petition for *certiorari* filed in this court, and the assignments of error, raise no question respecting the negligence of the ·chauffeur. The sole defense is that there was no competent or sufficient evidence that the chauffeur, at the time the injuries were inflicted, was operating the automobile in furtherance of the business of his employer, petitioner Frank. It is insisted that a motion for a directed verdict of non-liability should have been, and should now be, sustained.

It is undisputed that the automobile was the property of Frank, and that the driver in charge of it at the time of the accident was his regularly employed chauffeur. What is the effect of these facts to make a *prima-facie* case of Mills being engaged at the time in operating the car in the line of the duty he owed his employer? In other words, to cast upon the owner of the car the burden of showing that there was a departure from the line of duty on the part of Mills?

The Massachusetts rule, followed in some other jurisdictions, is to the effect that mere proof of the

ownership of the automobile by a defendant and that the chauffeur was his servant, does not make out a *prima-facie* case for a plaintiff that the servant was at the time of the accident acting within the scope of his employment. The decisions of some of the other jurisdictions are sharply contradictory. Notes Ann. Cas., 1916A, 659, 46 L. R. A. (N. S.), 1091, and L. R. A., 1916A, 960.

The true rule is, we think as stated by Labatt in 6 Master & Serv., section 2281a:

"A servant may be presumed *prima-facie* to have been acting in the course of his employment, wherever it appears, not only that his master was owner of the given instrumentality, but also that, at the time when the alleged tort was committed, it was being used under conditions resembling those which normally attended its use in connection with its use in the master's business."

In our opinion the last phrase in the above quotation is a just qualification. No presumption of a servant's acting in the line of duty should be drawn unless time, place, and the other circumstances in shedding light upon the transaction, indicate that it was one within the scope of the driver's duty. For example, take an auto truck customarily used in a city for freight traffic. Though it be shown to belong to a defendant, and to be in charge of one regularly employed as his driver, there ought not to be raised such a presumption or inference, where at the time of the tortious act it was being driven

to haul persons into the country.  In the pending suit, however, the concomitant facts are not out of accord.  It is shown that Belmont avenue, on which the automobile was being driven by Mills when the deceased was run over, is on the. route from the residential section in which petitioner lived to the Jewish Golf Club, of which he was a member, and the accident happened in the afternoon of Saturday, the Sabbath of the race to which petitioner belongs. This avenue is one over which petitioner's automobile naturally might be expected to be operated, and where it was not infrequently seen in charge of Frank's chauffeur.

Did the petitioner, as defendant below, by proof adduced, rebut this *prima-facie* case?  Frank testified that the car was in use at the time without his knowledge or authority, and that the chauffeur was on no mission for him or for any member of his family, for whose use and pleasure the automobile was kept. Mills was alone in the car at the time of the accident. The members of petitioner's family testified that none of them had sent Mills on a mission.  The chauffeur was not examined; he having left the jurisdiction shortly after the injuries were inflicted.  There is no proof to the point that the chauffeur was out on a private mission of his own, though Frank is shown to have had a conference with the chauffeur before he absconded and might have learned of such private mission, had this been the case.

In this state of the proof it is insisted by the counsel of Frank that the facts did not warrant the submission of the case to the jury. It is urged that the defendant carried successfully the burden of showing that the chauffeur was not at the time acting for him.

This position would be unassailable if the testimony of Frank had been uncontradicted or unimpeached. The respondent, plaintiff below, contends that the jury was warranted in discrediting Frank, and testimony is referred to, showing that defendant was contradicted by witnesses of plaintiff on the point of his (Frank's) having been notified of reckless driving which had been done by Mills previous to the accident in question, and by his manner of testifying when replying to cross-questions. It is further claimed that discredit was cast upon petitioner's testimony by his refusal as witness to give the portion of the city in which there lived a young woman with whom he was intimately associated, as he admitted; plaintiff Wright's theory evidently being that the car was being driven by Mills to carry a message from Frank to her.

Ordinarily the testimony of a witness who is not contradicted, impeached, or discredited must be accepted as true; but, if the witness relied upon to establish a given fact be discredited or impeached, that fact may not be treated as established as a matter of law or for purposes of a motion for peremptory instructions. There must, it is true, be a substantial

and more than colorable claim that the witness has been discredited; but, where this may by the jury be deemed to be sufficiently shown, the trial judge does not err in submitting the case to the jury.

We cannot follow the contention of Frank's counsel that his testimony, construable, as it was, as denying knowledge of previous reckless driving of his automobile by Mills, was evidence upon a point that was immaterial. One of the averments in plaintiff's declaration was that the chauffeur was unfit and reckless, and so known to be by Frank.

Neither can we approve as sound the contention that the jury may not reject the uncontradicted testimony of a witness "upon any kind of an attack that does not reach the legal requirement of testimony impeaching his veracity."

The word "impeach," in its strictly proper signification, as applied to a witness, means an attack by character evidence directed against his general credit for veracity; but another and broader meaning is conveyed by the expression—the discrediting of the witness in the other modes recognized by the law. Properly speaking, the witness in that case is discredited, and not impeached.

As tending to discredit a witness, the jury may consider the improbability of his statements as to facts remembered or claimed not to be recalled, as compared with the ordinary nature of things, by a cross-examination, in which he may be involved in inconsistencies, his ability and willingness to speak

the truth, and other criteria which may aid in the reaching of a conclusion satisfactory to the triers of facts. *Richmond* v. *Richmond,* 10 Yerg. (18 Tenn.), 345; *Wilcox* v. *State,* 3 Heisk. (50 Tenn.), 117.

The appellate courts, in a case such as this, will not permit testimony to be discarded or disregarded arbitrarily or capriciously. The trial judge and the court of civil appeals have ruled that there appear sufficient grounds of discredit to warrant a rejection by the jury of Frank's denial of his authorization of the trip in question, and we do not feel warranted in ruling to the contrary, viewing the matter in the light of all the facts disclosed by the evidence.

If the jury should thus discredit the testimony of Frank on the point the use the car was put to on the occasion in question, the *prima-facie* case of his liability for the tortious act of his chauffeur would not be destroyed, as a matter of law, and therefore the direction of a verdict in Frank's favor was properly denied.

But the administrator made an effort to reinforce the inference or presumption, discussed above, by proof of a declaration made by the chauffeur to the effect that he was at the time on a mission for his employer.

The deceased was struck by the automobile after he had disembarked from a street car, on which he had been a passenger, near the home of Mrs. J. B. Bates, who was introduced as a witness in behalf

of plaintiff. The street car motorman stopped his
car and carried the boy to the sidewalk, when an
effort was made to resuscitate him. Later the boy
was taken into the Bates home. The chauffeur, a
colored boy, followed, going into the kitchen, noticing
which the mother of Mrs. Bates suggested that the
latter go and have a talk with Mills. Mrs. Bates
testified:

"Q. Did you see the chauffeur, this Robert Mills,
the man that had charge of the automobile?

"A. I did.

"Q. Where was he when you saw him?

"A. In my kitchen.

"Q. Did he tell you what mission he was on when
he was going along that street?

A. "I naturally asked him where he was going,
and he said on a mission for Mr. Frank."

This testimony was objected to by the counsel
for Frank on grounds: (a) That the fact of Mills'
agency must be first established by outside evidence
before testimony in regard to his declaration may
be heard; (b) that the declaration is not competent
to establish the fact that Mills was acting for his
employer; and (c) that, if otherwise established,
the statement was incompetent, because not a part
of the *res gestae.*

The mere declaration of the chauffeur that he was
"on a mission for Mr. Frank" was incompetent to
establish the agency, since an agent cannot create
authority in himself to bind another as employer

by asserting his authority to do the particular act, or say that in so doing he was. acting within the line of his duty to such other as his general employer.

But the plaintiff insists that, where a *prima-facie* case of agency in making the trip in question had been shown, as above held, it was competent to prove the declaration of Mills as supplementing the previous testimony.

We are not dealing with a declaration of one shown to be a general agent, but with the declaration of a servant, asserted to be competent against his master, in which case the rule is that the act done cannot be qualified or explained by the servant's declaration, which amounts to no more than a mere narrative of a past occurrence. A servant is not authorized to bind the master by such a narration.

Authority such as may inhere in a general agent to make admissions being lacking, a mere declaration of one acting and speaking as employee must find basis for its competency on some other principle, such as the rule of *res gestae.*

The text of 2 C. J., 939, is applicable: "While the declarations of an alleged agent are of themselves incompetent to prove agency, if the agency is otherwise *prima-facie* proved, they become admissible in corroboration, where they constitute a part of the *res gestae* and were made at the time of the transaction in question."

See, also, Jones, Ev. (2 Ed.), section 255; 7 Labatt, Mas. & Serv., section 2535.

Was the statement competent as being a part of the *res gestae?*

The conversation with Mrs. Bates occurred ten or fifteen minutes after the boy had been struck; the statement of Mills was not voluntary or spontaneous, but was called out by a question put to him by Mrs. Bates. Retrospection and deliberation were not excluded as factors that may have inspired the words in reply. Those words were not part of a transaction then depending. In so far as they were relied upon to show, of themselves or by way of supplement or corroboration, that the car was operated in furtherance of the employer's business, they should have been held inadmissible.

A question is presented as to whether we should, for the error in the admission of the testimony of Mrs. Bates, reverse and remand for a new trial.

We have held that the jury would have been warranted in finding for the plaintiff administrator upon the *prima-facie* case above discussed, and the contention of his counsel is that this court, sitting in appellate review, is not able to determine that the jury did not base its verdict upon the *prima-facie* case, rather than upon the testimony of Mrs. Bates, or upon both together. It is, upon this premise, urged that no new trial should be granted; that being forbidden by the provision of Acts 1911, chapter 32 (Thompson's Shannon's Code, section 4902a1), which is to the effect that no verdict or judgment shall be set aside or a new trial granted by any appellate

court, on account of the improper admission or rejection of evidence, unless, in the opinion of the appellate court, 'it shall affirmatively appear that the error complained of has affected the results of the trial.''

For the opposing party the position advanced is that we should not hold the error in admitting said testimony to be harmless, or in character not reversible, since it was the only real evidence adduced by the successful plaintiff in the lower court on the point of the chauffeur's mission being one for Frank, without which the administrator must rely upon a mere presumption to support the *prima-facie* case above discussed.

We are brought to a consideration of the nature of the presumption.

''Presumptions of fact'' are but deductions drawn from particular facts or circumstances proved; the connection between them and the sought-for fact having received such sanction in the common experience of mankind as to have become recognized as justifying the deduction to be made by the triers of facts.'' Words and Phrases (Second Series), 1167.

But, as already seen, the administrator did not stop with and rely upon the mere presumption. He introduced proof by Mrs. Bates of the fact (which before stood to be deduced) that the car was being driven on Frank's mission. The chauffeur did not appear and deny Mrs. Bates' testimony, which, being held competent by the trial judge, to the minds of

the jurors evidently established the fact of authority from Frank.

Now presumptions are raised to take the place of proof; "where the proofs are present there is neither foundation nor room for the presumption." *Keller* v. *Over,* 136 Pa., 1, 20 Atl., 25; *Galpin* v. *Page,* 18 Wall., 350-366, 21 L. Ed., 959.

We do not intimate a holding that circumstances may not be relied upon to corroborate such a presumption. What we find here is that the administrator urged before the jury, and before us, that the testimony of Mrs. Bates itself, if competent, was receivable as plenary proof of the fact of the existence of authority from Frank, and it was urged before us, to the point of persuasion, that the jury so found. If they did, it was finding of a fact from proof, and there was no room for the presumption, or the jury's resorting to it as the sole foundation for its verdict.

We cannot conceive how the jury might have treated authority for the trip as established by proof of the fact actually adduced and accepted by it as true, and at the same time merely presumed its existence. We are led by plaintiff himself to the belief that the jury did not act on the presumption alone, but on the Bates' testimony, and we are of the opinion that, since that testimony was inadmissible, a new trial should be awarded. Reversed and remanded.

MR. JUSTICE LANSDEN, dissents from the ruling on the last point.