GASTON *v.* SHARPE *et al.*

(*Nashville,* December Term, 1942.)

Opinion filed February 27, 1943.

610

ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, of Memphis, for plaintiff in error.

CHARLES L. NEELY and O. W. WELLS, both of Memphis, for defendant in error.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This is a suit for damages for personal injuries. There was a directed verdict for the defendants below. The Court of Appeals reversed the judgment of the trial court and remanded the case for a new trial. This court granted petition for *certiorari* and the case has been argued here.

The City of Memphis was sponsor for a WPA project. Under the contract between the city and the government, the city was to make certain contributions to the project, among other things, to furnish the necessary machinery. The city rented a machine called a dragline from defend-

ant Sharpe, doing business as W. L. Sharpe Contracting Company, along with an engineer or operator to run the machine. The plaintiff was injured by the negligent operation of the machine by the man in charge and the question is whether at the time of the accident the operator was a loaned servant so as to relieve his general employer (Sharpe) from this negligence.

Proof shows that Sharpe owned this machine which he used generally in his business and that at times, when not being used in his own work, Sharpe would rent this machine to others. Application was made to him for the use of the machine by the City of Memphis and he submitted a written offer to rent the same to the city at the price of $4.25 an hour, Sharpe to pay the wages of the operator and the city to furnish all the fuel, oil, and grease. Sharpe's offer contained a clause providing "the operator will work under your supervision and orders and be satisfactory to you." Other details of the offer are not material.

In pursuance of this offer a written contract was entered into between Sharpe and the city embodying in substance the terms of the offer. This contract was executed on a printed form, apparently used by the city for all contracts, and some of the printed provisions are irrelevant. The contract does not contain the above-quoted clause in the offer that the operator was to work "under your supervision and orders and be satisfactory to you." The contract does contain a printed provision, which we will notice hereafter, running as follows: "It is expressly agreed and understood that no stipulation, representation or statement made by either party to the other, prior to the execution of the contract, and not expressed therein, shall be deemed to be or taken as part

of the contract which together with the bid, general conditions, plans and specifications made a part thereof, shall be the sole measure of the liabilities and duties one to another of each party."

There is not much conflict in the evidence. Sharpe continued to pay the wages of the operator of this machine during its use on this project. The machine would perform several functions. It could be used for excavation, lifting, pile driving, and otherwise. Those in charge of the project were entitled to use it for any of these purposes. It was the duty of the operator to use the machine on the project as directed by those supervising the work. At the time of the accident the machine was being used to drive piles.

Without going into the details, it is sufficient to say that one of the laborers on this job was ordered by a foreman or supervisor of the work to make some adjustment of a line or cable on the machine. He climbed up some uprights for this purpose. It was necessary that some slack be allowed in the rope or cable to permit the adjustment and a signal was given to the operator of the machine by the foreman or supervisor to let out the slack. Misinterpreting the order, or negligently attempting to execute it, the operator dropped the hammer, weighing 2,000 pounds, which was used to drive piles. One of the plaintiff's legs was in the path of this hammer and as the hammer descended his leg was caught between the hammer and an upright and very severely and permanently injured. The operator furnished by Sharpe was in charge of the dragline and its manipulation and his duty was to employ it as directed by the foreman or supervisor of the work. These directions were given by signals which the parties all appeared to have understood.

The Court of Appeals thought the case was controlled by the decision of this Court in *Chamberlain* v. *Lee,* 148 Tenn., 637, 257 S. W., 415, wherein it was held that a servant could not be regarded as a loaned servant unless the master had resigned full control of him for the time being. Applying that rule to the facts of this case the Court thought that Sharpe had not surrendered full control of the operator of this machine and consequently must be held for the operator's negligence.

On its face, as stated in the opinion, *Chamberlain* v. *Lee* was a case in which the general employer of the servant and the defendant were merely co-operating in a particular undertaking and the decision, holding it was not a case of loaned servant, was partly rested on the co-operative feature of the effort.

In *Owen* v. *St. Louis Spring Co.,* 175 Tenn., 543, 136 S. W. (2d), 498, 499, we undertook to review all our previous decisions involving the doctrine of loaned servant and said that a test running through them all was "indicated by the question 'In whose work was the employee engaged at the time?' " That is, whose work was being done?

The last-named test is that adopted by the Supreme Court of the United States in *Standard Oil Co.* v. *Anderson,* 212 U. S., 215, 29 S. Ct., 252, 53 L. Ed., 480, and *Denton* v. *Yazoo & M. V. R. Co.,* 284 U. S., 305, 52 S. Ct., 141, 76 L. Ed., 310. This test has also been employed in New York. *Braxton* v. *Mendelson,* 233 N. Y., 122, 135 N. E., 198, and *Charles* v. *Barrett,* 233 N. Y., 127, 135 N. E., 199.

Neither the test stated in *Chamberlain* v. *Lee* nor that stated in *Owen* v. *St. Louis Spring Co.,* has proven entirely adequate. Instead of being tests they are rather to be considered as factors in reaching a conclusion as

to where the responsibility lies for the servant's act. This is true because a servant at a particular time may remain under the control of his general employer for some purposes and yet be under the control of a special employer for others. Likewise it sometimes happens that a particular work in which the servant is engaged may be properly considered as the work or business of both the general employer and the special employer.

■ The question is difficult. It is considered at some length in Restatement of Agency, section 227. We take the following from Restatement as a satisfactory rule: "Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act. This is a question of fact in each case."

■ There is no conflict in the evidence as to where the authority lay to direct the specific act which caused the injury to the plaintiff in the case before us. All the testimony is that the operator of this machine was to use it on this job as directed by the supervisor or foreman on the work. That is to say the operator was to swing the boom, drop the hammer, slacken the cables, and do the other things according to signals given him by the foreman or supervisor. The latter directed that slack

be let out in one of the ropes. The operator of the machine negligently misinterpreted this order or negligently attempted to execute it. It was in pursuance of an order of the foreman or supervisor, which that party was entitled to give, that the operator did the thing that injured the plaintiff. In performance of this specific act, the operator was not employed in the business of and subject to the direction of defendant Sharpe. It follows that we think the trial judge was right in directing the verdict in defendant's favor.

 The Court of Appeals ruled out certain evidence offered by defendant below about which action complaint is here made. The letter or offer of Sharpe heretofore referred to was held to have been improperly admitted because it is said that the printed or written contract contained the whole agreement. This written contract, however, in the clause previously quoted, says that the "bid" shall be considered as part of the contract, and this letter was in the nature of a bid. The Court of Appeals also ruled out certain other testimony about which complaint is made but we think all this is immaterial. We find no conflict in the evidence to the effect that the operator of this machine in the performance of the specific act causing the injury was under the direction of the foreman or supervisor of this work.

Counsel for the plaintiff press upon our consideration cases in which the general employer rents to the special employer a piece of complicated machinery along with a skilled man to operate the machine. It has been held, under such circumstances, that the operator did not become the servant of the special employer. In these cases, however, the specific act, the basis of suit, was not performed under specific orders of the special employer as here.

Moreover, the rule urged has not been applied in this jurisdiction. In *Powell* v. *Virginia Construction Co.,* 88 Tenn., 692, 13 S. W., 691, 17 Am. St. Rep., 925, the general employer furnished the special employer with a locomotive engine along with an engineer and a fireman to operate it. Suit was brought for damages inflicted by negligent operation of the locomotive by the fireman, but the general employer was exonerated from liability, the negligent act having been performed in the business of the special employer.

For the reasons stated, the judgment of the Court of Appeals is reversed and that of the trial court affirmed.