CLEVELAND WRECKING COMPANY and Jaffe-Wohl Iron & Metal Company, Plaintiffs in Error, v. ROY T. BUTLER, Defendant in Error.—421 S.W.(2d) 380.

Middle Section. June 28, 1967.

Certiorari Denied by Supreme Court November 20, 1967.

572

William J. Harbison, Trabue, Minick, Sturdivant & Harbison, Nashville, for plaintiff in error, Cleveland Wrecking Co.

Shelton & Shelton, Columbia, for plaintiff in error, Jaffe-Wohl Iron & Metal Co.

Rogers, Howard, Redden & Mills, Birmingham, Ala., and William N. Lloyd and Bigham & Binkley, Lewisburg, for defendant in error, Roy T. Butler.

TODD, J. Cleveland Wrecking Company and Jaffe-Wohl Iron & Metal Company have appealed in error from a verdict and judgment against them for damages for personal injuries sustained by Roy Butler.

The undisputed facts shown by the record are as follows:

On or about January 23, 1963, E. I. DuPont de Nemours and Company, hereinafter called DuPont, entered into a written contract with Wrecking Corporation of America, hereinafter referred to as Wrecking Corporation, to perform certain dismantlement work at the DuPont plant in Old Hickory, Tennessee.

In carrying out said dismantlement, Wrecking Corporation utilized the services of two men, one Ralph Claussen, as project manager, and another individual as wrecking superintendent. Both of these men were regular employees of Cleveland Wrecking Company, hereafter called Cleveland, but had been "loaned" to Wrecking Corporation under an arrangement whereby Cleveland continued these two men on Cleveland's payroll, and paid them, but was reimbursed by Wrecking Corporation.

Wrecking Corporation entered into a written contract with Jaffe-Wohl Iron & Metal Company, hereinafter referred to as Jaffe-Wohl, to sell to Jaffe-Wohl a considerable quantity of scrap metal to be derived from the dismantlement at the DuPont plant. It was agreed that Jaffe-Wohl would furnish empty trailers at the DuPont plant, that Wrecking Corporation would load the scrap metal into the trailers, and that Jaffe-Wohl would move the loaded trailers to scales, receipt for the loads, and transport them to the plant of Jaffe-Wohl in Birmingham.

For such purposes of such transportation, Jaffe-Wohl had a contract with one Horace Underwood, whereby Underwood undertook to lease to Jaffe-Wohl certain truck tractors and trailers and to furnish a competent driver for each truck.

Butler was one of the drivers so furnished and, while operating one of such trucks transporting the scrap metal from DuPont at Old Hickory to Jaffe-Wohl at Birmingham, was injured when the truck left the highway and was wrecked.

Butler sued DuPont, Cleveland, Jaffe-Wohl and H. G. Underwood, for damages for alleged negligence in causing or permitting the truck to be improperly loaded, resulting in the wreck and injuries to Butler. Before trial a nonsuit was entered as to Underwood. A verdict was directed in favor of DuPont at the conclusion of plaintiff's proof and there is no exception or appeal from this ruling.

There was a jury verdict and judgment in favor of Butler and against Cleveland and Jaffe-Wohl, both of whom have appealed in error and assigned errors which shall now be dealt with in order.

The bases of Cleveland's assignments of error are clearly and succinctly stated in its brief as follows:

On behalf of Cleveland Wrecking Company it is insisted [1] that there is no evidence of negligence on its part which caused or contributed to the plaintiff's injuries; [2] that the plaintiff was clearly and obviously guilty of contributory negligence or assumption of risk as a matter of law; [3] and that the plaintiff below sued the Cleveland Wrecking Company when it had no connection with the job, and was neither per-

forming the demolition in question, selling the scrap, or otherwise participating in the subject job.

Cleveland's insistence number one presents the dual issue of (a) whether negligence did occur in loading the scrap metal at DuPont, and (b) if so, whether such negligence was committed by an agent or employee of Cleveland.

█ Butler, himself, testified that the trailer was improperly loaded, hence there was some evidence to justify the finding of the jury that some negligence did occur in the loading at the DuPont plant. Able counsel for Butler have cited in their brief a number of excellent authorities among the multitude of cases which hold that the finding of the jury supported by some substantial and material evidence should not be disturbed. Since this principle is so well settled as to hardly require citation of authorities, and especially since our decision rests upon other grounds, we shall not burden this opinion with such citations.

The issue of whether any agent or employee of Cleveland was involved in the operations at DuPont is included in Cleveland's insistence number three and will be dealt with hereafter in connection therewith.

█ Cleveland's insistence number two presents the perennial question of how far the courts may properly go in withdrawing from the jury the questions of contributory negligence and assumption of risk. It is certainly well established that if reasonable minds might disagree upon the reasonableness of the actions of the parties, a jury question is presented. Among the many decisions supporting this rule is the case of **Gunn v. International Harvester Co.**, 366 F.2d 349 (6th Cir. 1966),

in which a truck driver sued a shipper for improper loading of which he was aware. The case of Osborn v. City of Nashville, 182 Tenn. 197, 203, 204, 185 S.W.2d 510, 513 (1945), is also especially in point.

No exact and well-defined line of distinction can be drawn as to when contributory negligence and assumption of risk are fact questions for the jury and when they are law questions for the court. The decision in each case must necessarily rest upon the peculiar facts of the case. In the present case, we are of the opinion that reasonable minds might differ in passing judgment upon the behavior of Butler, and thus we hold that it was proper for the trial judge to submit this question to the jury. We deem it superfluous to recite details from the evidence and authorities in support of this holding, since our disposition of the case rests upon other grounds.

In response to Cleveland's insistence number three, counsel for Butler urge the following propositions of fact to support the verdict of the jury against Cleveland:

1. Ralph Claussen had the responsibility and supervision of loading the trucks.

2. Mr. Claussen and the wrecking superintendent on the job were employees of the Defendant, Cleveland Wrecking Company.

3. Cleveland Wrecking Company paid Mr. Claussen's salary while he worked on this job and was in turn reimbursed by the Wrecking Corporation of America.

4. Other payroll checks were issued directly by Wrecking Corporation of America.

5. Weight tickets given to the Plaintiff and vehicles used on the job bore the name of Cleveland Wrecking Company.

6. Mr. Claussen assumed that Cleveland Wrecking Company had the right to take him off this job whenever it wanted to.

7. Cleveland Wrecking Company owned fifty percent stock in Wrecking Corporation of America.

8. Both corporations had the same secretary and perhaps other officers in common. (Butler's reply brief).

Each of the foregoing propositions of fact are supported by evidence in the record; however, Cleveland insists that they constitute mere circumstances which are offset by uncontroverted and unimpeached testimony which not only explains such circumstances, but directly contradicts the fact suggested by the circumstances, i.e., that Cleveland was so involved in the negligence charged as to be responsible therefor.

The following quotations from the testimony of Mr. Claussen are illustrative of the direct, consistent, uncontradicted and unimpeached testimony which, in our opinion, completely erases any suggestion of liability on the part of Cleveland:

Q. In September, 1963, what were you doing at the time of this accident?

A. I was employed by the Wrecking Corporation as Project Manager, and we were doing demolition work for the DuPont Company.

* * * * * *

Q. What Company was doing this work?

A. Wrecking Corporation of America.

Q. Was it being done pursuant to a contract?

A. Yes, DuPont and Wrecking Corporation of America.

[Note: The written contract is a part of the record as Exhibit to this witness' testimony.]

\* \* \* \* \* \*

Q. Mr. Claussen, if you can, what is the relationship between these two corporations?

A. The only relationship is that the Cleveland Wrecking Company owns fifty per cent of the Wrecking Corporation.

\* \* \* \* \* \*

Q. Were you doing any work for Cleveland Wrecking Co.?

A. No, I was primarily in charge of the wrecking for the Wrecking Corporation.

Q. How were you paid; your salary, for example?

A. My salary, my checks, came from Cleveland Wrecking Company and the Wrecking Corporation paid Cleveland Wrecking for my salary.

Q. You mean reimbursed them?

A. Reimbursed them, yes.

\* \* \* \* \* \*

Q. In what name would you carry the bank account?

A. Wrecking Corporation of America.

\* \* \* \* \* \*

Q. All the checks were made out to the Wrecking Corporation of America?

A. Yes, I deposited them in the bank at Old Hickory, Tennessee.

Q. How about payroll checks?

A. Payroll checks was made on the Wrecking Corporation of America and all bills were paid on the Wrecking Corporation.

Q. Did you have any equipment of Cleveland Wrecking on this job?

A. Yes, we leased, rented 2 high-side trucks, we couldn't get them locally and we used them for hauling debris and wood and items like that.

Q. State whether or not Wrecking Corporation paid the rent?

A. We paid the rent on the equipment.

Q. To whom?

A. Cleveland Wrecking.

\*　　\*　　\*　　\*　　\*　　\*

Q. As far as profit, did any of it go to Cleveland Wrecking?

A. No, it all went into Wrecking Corporation.

Q. There has been some reference to some tickets by truck drivers with the legend "Cleveland Wrecking Co." printed on them.

A. Yes, I had used a lot of tickets and the Wrecking Corporation didn't have any, so the scale was a good distance from our operation and I used these load tickets and took a rubber stamp and rubber stamped "Wrecking Corporation" on them, when a truck would

come in, we would weigh the trailer empty, then weigh them again and I'd made out a ticket showing the gross and net weight and I'd make a billing on Wrecking Corporation's bills and send that to Jaffe-Wohl.

\* \* \* \* \* \*

Q. But this ticket had been originally printed "Cleveland Wrecking Co."—

A. Yes, but I stamped "Wrecking Corporation of America" on it.

\* \* \* \* \* \*

Q. From that copy, how would you make up your bill to Jaffe-Wohl?

A. \* \* \* I would make up my billing off the weights of that load ticket and put it on a regular sales ticket and that sales ticket was mailed to Jaffe-Wohl.

Q. On whose letterhead?

A. Wrecking Corporation of America.

\* \* \* \* \* \*

Q. While you were on this project, did you do any work for Cleveland Wrecking Company?

A. No.

\* \* \* \* \* \*

Q. And they were the people that you made your reports—

A. My reports was made to Wrecking Corporation's man in the Cincinnati office.

Q. Now, as part of the contract between the Wrecking Corporation and Mr. Jaffe, who was doing the loading?

A. We were, the Wrecking Corporation did the loading.

We repeat, for emphasis, that the foregoing testimony is completely uncontradicted by the testimony of any witness, and the credibility of the witness Claussen was in nowise questioned, challenged, impeached or discredited.

We must determine whether it is proper to permit the jury to disregard such testimony in favor of the foregoing suggestive circumstances relied upon by appellee.

The oft-cited case of Standard Oil Co. of Louisiana v. Roach, 19 Tenn.App. 661, 94 S.W.2d 63 (1935), contains the following:

It is well settled that such testimony [which is neither contradicted, impeached, nor discredited by any other testimony] must be accepted as true and the jury cannot reject it. If it is not contradicted, impeached, or discredited, it cannot be permitted to be discredited or disregarded arbitrarily or capriciously. 19 Tenn. App. at 674, 94 S.W.2d at 71.

In the case of Frank v. Wright, 140 Tenn. 535, 205 S.W. 434 (1917), where the issue was one of agency of a chauffeur, the Court said:

"A servant may be presumed *prima facie* to have been acting in the course of his employment, wherever it appears, not only that his master was owner of the given instrumentality, but also that, at the time when the alleged tort was committed, it was being used under conditions resembling those which normally attended its use in connection with its use in the master's business." 140 Tenn. at 539, 205 S.W. at 435.

Frank testified that the car was in use at the time without his knowledge or authority, and that the chauffeur was on no mission for him * * *. 140 Tenn. at 540, 205 S.W. at 435.

It is urged that the defendant carried successfully the burden of showing that the chauffeur was not at the time acting for him.

This position would be unassailable if the testimony of Frank had been uncontradicted or unimpeached. 140 Tenn. at 541, 205 S.W. at 435.

In Bank of Hendersonville v. Dozier et al., 24 Tenn. App. 178, 142 S.W.2d 191 (1940), the Court said:

Where the testimony of a witness is not contradicted, either by direct evidence or by circumstances inconsistent with its truth, it must be taken as true. 24 Tenn. App. 192, 142 S.W.2d at 200.

32A C.J.S. Evidence sec. 1039, pp. 755-756:

A fact cannot be established by circumstances which are perfectly consistent with direct, uncontradicted, and unimpeached testimony that the fact does not exist. (citing in footnote 26 cases—U.S. C.C.A., Ga., Miss., Neb., S.C., Wyo.).

The appellee, Butler, insists:

1. That the liability of Cleveland for the acts of Claussen was a question of fact for the jury, and cites Gaston v. Sharpe, 179 Tenn. 609, 168 S.W.2d 784 (1943). However, this case quotes Restatement of Agency with approval as follows:

"Since the question of liability is always raised because of some specific act done, the important question

is not whether he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting *in the business of and under the direction of one or the other.*" 179 Tenn. at 614, 168 S.W.2d at 786. (Emphasis supplied.)

In the *Gaston* case, the Supreme Court reversed the Court of Appeals and affirmed the trial court where a verdict had been directed for the defendant.

■ In the present case, we find no affirmative evidence in the record that Claussen was acting in the business of or under the direction of Cleveland in respect to the specific act done, i. e., loading the trailer. All of the evidence is to the contrary.

Restatement of Agency, sec. 227, relied upon by appellee, refers to an inference that original service continues in the absence of evidence to the contrary. As stated, the uncontroverted direct evidence in this case is to the contrary.

For the reasons stated, we are of the opinion that there was no material and substantial evidence upon which the jury was justified in rendering its verdict against Cleveland, and that the motion of Cleveland for peremptory instructions at the conclusion of all the evidence should have been sustained.

For its part, Jaffe-Wohl has assigned seven errors complaining of the action of the trial court in (1) overruling its special plea, (2) allowing an amendment to the declaration, and (3) overruling motions for directed verdict.

Butler originally sued DuPont, Cleveland, Jaffe-Wohl and H. G. Underwood, alleging in the first count of his

declaration that he was "employed and under the direction of" all of the defendants, and in the second count that "said defendants were thereby engaged in a joint venture for a common purpose;" however, plaintiff was permitted by amendment to delete Jaffe-Wohl from the first two counts of the declaration, and to add a third count against Jaffe-Wohl, only, alleging that

> * * * this defendant negligently and carelessly failed to keep an inspector on the premises to supervise the loading and failed to require its co-defendants to load the trailers in a safe and proper manner.,

to which third count, Jaffe-Wohl plead general issue.

◼ Thus, in respect to Jaffe-Wohl the jury could consider only the grounds of recovery stated in the aforesaid third count of the declaration, and recovery, if allowed, must be based upon such grounds. See Kemp v. Caruthers, 11 Tenn.App. 201, 208 (M.S.1930), and cases cited therein.

◼ The first assignment of error of Jaffe-Wohl relates to its special plea, which relied upon the protection of the Workmen's Compensation Law of the State of Alabama and settlement made thereunder by H. G. Underwood. An order of the trial court recites that,

> This cause came on to be heard on this January 24, 1966, upon the demurrer and special plea filed by the defendant, Jaffe-Wohl Iron and Metal Co. * * * It is furthermore the opinion of the Court that the demurrer and special plea of the defendant, Jaffe-Wohl Iron and Metal Company, are without merit and same are hereby overruled, to all which action of the Court the defendant, Jaffe-Wohl Iron and Metal Company excepts.

Thereafter, Jaffe-Wohl filed a general issue plea of not guilty. The record is silent upon what pleadings were read to the jury, and we must assume that only the not guilty plea was read to the jury on behalf of Jaffe-Wohl. This assumption is re-inforced by the absence of reference to the special defense either in the regular charge of the court, or any specially requested instruction.

In this state of affairs the evident intent and effect of the action of the trial judge was that he held the special plea to be insufficient as a matter of law and sustained a demurrer to the same. We cannot agree that this action was correct, for the plea which the court overruled was a special plea in bar, asserting new facts in avoidance, i.e., (a) that the employment was such as would be governed by the Workmen's Compensation Law and (b) that settlement had been made by another defendant under the terms of that law.

In the unreported opinion of this Court in the case of Keatts v. Wyatt (M.S.1954), it was held:

In order to make an issue, triable by jury, upon the new matter brought forth by this special plea, it was necessary that such matter be traversed or denied by a replication. Defendants should have taken a judgment by default upon their plea, or required plaintiff to join issue upon it. Teasdale & Co. v. Manchester Produce Co., 104 Tenn. 267, 56 S.W. 853; Stephen on Pleadings, (9th Am. Ed.), 217-219, Gilreath, History of a Lawsuit, (7th Ed.), sec. 228-233.

The proper ruling of the trial judge upon such a pleading (if indeed any ruling was required) would have been to hold the plea to be an "affirmative special plea in

bar," requiring a replication making an issue to be submitted to the jury. Caruthers, History of a Lawsuit sec. 230 (8th ed. 1963); Troxel v. Jones, 45 Tenn.App. 264, 322 S.W.2d 251 (1958). However, any error of the trial judge in this connection is rendered immaterial and harmless by the failure of defendant to insist that the issue be submitted to the jury with proper instructions, and especially the fact that we are disposing of the appeal of Jaffe-Wohl upon other grounds.

The second complaint of Jaffe-Wohl concerning the allowance of amendments is effectively answered by T.C.A. sec. 20-1505, as follows:

No civil suit shall be dismissed for want of necessary parties, or on account of the form of action, or for want of proper averments in the pleadings, but the courts shall have power to *change the form of action,* strike out or insert in the writ and pleadings the names of either plaintiffs or defendants, so as to have the proper parties before the court, and to allow all proper averments to be supplied, upon such terms as to continuances as the court, in its sound discretion, may see proper to impose. (Emphasis supplied).

Also, the Supreme Court of this State has held:

"[T]he allowing or refusing an amendment to pleadings is within the sound discretion of the Court and will not be reversed unless that discretion is abused; such discretion has been seldom adversely reviewed on appeals; and it will be presumed that allowing or refusing an amendment was done in the exercise of legal discretion, in the absence of a showing to the contrary." Womble v. Walker, 216 Tenn. 27, 36, 390 S.W.2d 208, 212 (1965).

We have carefully examined the authorities cited by appellant in support of its position that Butler should not have been allowed to abandon his original position in the first two counts of his declaration in favor of a new position as stated in the third count, but we are of the opinion that the cited authorities are all distinguishable from the case at bar. Moreover, we have determined that the liability of Jaffe-Wohl should be concluded on other grounds, making further discussion of the amendment unnecessary.

The third assignment of error of Jaffe-Wohl complains of failure to direct a verdict because the undisputed evidence shows the plaintiff's exclusive remedy was under the Workmen's Compensation Act of Alabama or Tennessee. In support of this contention, Jaffe-Wohl cites Title 26, Section 272, Code of Alabama, and a considerable number of cases from Tennessee and Alabama.

Reference to the bill of exceptions reveals that Mr. Ralph Jaffe, Vice President of Jaffe-Wohl, testified as follows:

Q. And you are not saying or claiming that he was an employee of yours.

A. No sir, he was not.

In this state of the record, we could hardly hold that the evidence was conclusive that Butler was an employee of Jaffe-Wohl, but, as previously stated, his relationship to Jaffe-Wohl would have been a proper issue for submission to the jury under proper pleadings and instructions of the court.

In its fourth and fifth assignments, Jaffe-Wohl insists that there is no basis for holding it liable for such negli-

gence, if any, as may have occurred. We deem this contention to be well-founded and determinative of the liability of Jaffe-Wohl.

The plaintiff having abandoned his contention that he was an employee of Jaffe-Wohl (by amending counts one and two of his declaration), is precluded by this action from asserting any duty of Jaffe-Wohl based upon the relation of master and servant. Kemp v. Caruthers, supra. He is thus left in the position of a stranger or outsider who has been hired by a third party (Underwood) to haul cargo (scrap metal) belonging to Jaffe-Wohl.

Jaffe-Wohl, by the pleading of plaintiff, is in the position of a purchaser of material who has engaged an independent transportation agency to transport its material from a distant point where it is loaded by the seller without any control or supervision by the purchaser.

We have been unable to find any basis, either in the testimony in the record, or in the authorities cited by appellee, for a holding that the purchaser-consignee has any duties whatsoever as to the manner of loading of the shipment.

In support of his insistence that Jaffe-Wohl had some duty, hence liability, appellee cites Gamble v. Vanderbilt University, 138 Tenn. 616, 200 S.W. 510, L.R.A.1918C, 875 (1917), which involves the operation of a defective elevator on the premises of defendant; International Harvester Co. v. Sartain, 32 Tenn.App. 425, 222 S.W.2d 854, 873 (1948), which involves the dangerous instrumentality of electricity, and 38 Am.Jur., Negligence sec. 85, and Harper and Jones, Torts, Vol. 2, p. 1536, both of which refer to instrumentalities inherently dangerous.

We cannot say without proof or authority that a load of scrap iron is so inherently dangerous that one who purchases same should send an inspector to the point of origin to make sure that the seller has properly loaded it and that the transportation agency has properly checked and verified the loading.

On the contrary, the uncontradicted testimony in the record is to the effect that over four hundred loads of scrap metal had already been hauled from this job to Jaffe-Wohl without untoward incident. Certainly nothing appears in this record to put Jaffe-Wohl on notice that it was having cargo transported which was so inherently dangerous as to require the sending of a special representative from Birmingham to Old Hickory to supervise the activities of the seller in loading cargo.

As a matter of common sense and reason, the general rule must be that a purchaser who purchases a cargo already loaded upon a transportation device has no duty to supervise either the seller who loaded the cargo or the transportation agency which accepts and transports the load, and this general rule must be so devoid of exception that no reported case has ruled otherwise.

The cases of Monday v. Reed, 47 Tenn.App. 656, 341 S.W.2d 755 (E.S.1960), and International Harvester Co. v. Sartain, 32 Tenn.App. 425, 222 S.W.2d 854 (1948), bear upon this question to the extent that they hold that one who employs an independent contractor to perform certain work is not liable to an employee of such independent contractor for injury occurring during the performance of the work.

In 27 Am.Jur., Independent Contractors sec. 36, p. 513, is found this statement:

> It is apparent that virtual abrogation of the general doctrine of an employer's nonliability for acts of an independent contractor or the latter's servants would result if the law were to predicate, under all circumstances, the existence of an absolute duty on the employer's part to guard against all accidents, probable as well as improbable, that might happen, to the damage of third persons, while stipulated work is being performed by an independent contractor. If, therefore, recovery is sought on the ground that an employer should have adopted certain precautionary measures for the purpose of preventing the injury complained of, the action must fail, unless the plaintiff can at least show that, in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen if those precautionary measures were omitted. Moreover, an employer cannot be charged with liability on the theory that it is his duty to insert in a contract an affirmative provision to the effect that the contractor shall be guilty of negligence, since the law implies that every person who is authorized to do an act which, if it is done improperly, may injure his neighbor will do that act without negligence.

The sixth and final assignment of error of Jaffe-Wohl relates to contributory negligence. Approximately the same contentions were made by Cleveland and disposed of heretofore in dealing with Cleveland's assignments.

In sustaining the fourth and fifth assignments of error of Jaffe-Wohl, we hold that a verdict should have been directed in favor of Jaffe-Wohl.

In summary, we are satisfied from the record that there were a number of persons or corporations against whom the injured party had a right to assert his claims for damages. The most obvious are Underwood, his immediate employer, Ralph Claussen, who supervised the loading, and Claussen's superior, Wrecking Corporation. Whether the injured party did, in fact, seek or recover compensation from them does not appear, nor can this affect our judgment. It does appear conclusively from this record that the two defendants before us were not the proper source from which his damages should be obtained.

The judgment of the trial court against appellants is reversed and the suit against them is dismissed at the cost of appellee.

Shriver, P. J., and Puryear, J., concur.